UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUPAN CHAKMA, SULOY TRIPORA, TAPAN KANTI TANCHANGYA, TIYANIT KAEWPAN, and PRAMITA CHAKMA, on behalf of themselves and others similarly situated

        Plaintiffs,

  v.

SUSHI KATSUEI, INC. d/b/a SUSHI KATSUEI PARK SLOPE, ROYAL KATSUEI, INC. d/b/a SUSHI KATSUEI WEST VILLAGE, AYE AYE SWE, and AUNG KO WIN,

        Defendants.

23-cv-07804 (KPF)

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

D. Maimon Kirschenbaum
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and proposed Class*

**Table of Contents**

I.   ARGUMENT ................................................................................................................. 1

   A.   Defendants Fail to Raise Any Meaningful Arguments Against Certification ..................... 1

      i.   The record is clear that both Sushi Katsuei locations implemented common payroll policies ........................................................................................................... 1

      ii.   Plaintiffs have established commonality and typicality ................................................. 3

      iii.  Plaintiffs have established numerosity ........................................................................... 7

      iv.   Defendants cannot avoid that common questions of law and fact predominate and a class action is superior to other methods of adjudication ............................................... 7

II.  CONCLUSION ............................................................................................................ 9

Plaintiffs submit this reply memorandum of law in further support of their motion for class certification.[1]

I.   ARGUMENT

**A.  Defendants Fail to Raise Any Meaningful Arguments Against Certification**

  **i.   The record is clear that both Sushi Katsuei locations implemented common payroll policies**

As an initial matter, the Court should reject Defendants' arguments that the Sushi Katsuei restaurants are unrelated (Defs.' Mem. at 22-26) and find that both locations implemented common payroll practices and are properly considered a single, integrated employer for the purposes of this motion.  Defendants do not deny that the restaurants—which are owned by two spouses who admit that they both worked at both locations—share a name, share a web site, implement the same idiosyncratic payroll polices, used the same accountant to oversee payroll practices, and shared employees.  On a motion for class certification, these facts are more than sufficient to find that restaurants do not operate at "an arm's length" and are, in fact, a single, integrated enterprise.

The Supreme Court has cautioned courts to avoid "engag[ing] in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Fund*, 568 U.S. 455, 465-66 (2023); *see also Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("[T]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certificate stage are not binding on a subsequent fact-finder, even the certifying court.").  Thus, once Plaintiffs have established that a class of employees at multiple restaurant locations were subject to common

---

[1] With this memorandum of law, Plaintiffs submit the September 10, 2024 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Ex. [number]"). In addition, as used herein, "Pls.' Mem." refers to Plaintiffs' memorandum of law in support of their motion for class certification and "Defs.' Mem." refers to Defendants' memorandum of law in opposition to Plaintiffs' motion for class certification.

policies, they have met their burden at the certification stage. Faced with the same argument that a class should not be certified because "members of the putative class worked across different restaurants," Judge Liman recently opined that:

> Plaintiffs can establish a common question by demonstrating that there is a common policy across both Restaurants that will produce answers that apply to all plaintiffs . . . and drive the resolution of this litigation. […] It is not fatal that the policy is implemented by different persons at the different restaurants or that the tip pools are comprised of different individuals. That is inherent to any labor law class action that covers more than one work site. All that is necessary is that there be 'some glue,' […] holding together the practices at each of the Restaurants such that they can also be said to derive from the same policy that violates the labor laws […].

*Mangahas v. Eight Oranges Inc.*, No. 22-cv-4150, 2024 U.S. Dist. LEXIS 98151, at *20-21 (S.D.N.Y. May 31, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)); *see also, e.g., Bayne v. Napw, Inc.*, No. 18-CV-3591, 2021 U.S. Dist. LEXIS 151438, at *12-13 (E.D.N.Y. Aug. 10, 2021) ("Defendants insist that Plaintiffs must prove the merits of the class claims before class certification can even be granted . . . [w]hile it is true that Plaintiffs must eventually prove liability, they need not do so now."), *report and recommendation adopted by*, 2021 U.S. Dist. LEXIS 199223 (E.D.N.Y. Oct. 15, 2021).

Here, as in *Mangahas*, Plaintiffs have shown that Defendants enacted a single set of common policies across both restaurants. Pls.' Mem. at 7-16, 18-20. For example, Plaintiffs established that the Restaurants payed tipped employees the same hourly rates—which were not necessarily the minimum statutory rates—at both restaurants and that both locations switched from a biweekly to weekly payroll cycle at the end of 2022. *Id*. at 5, 7. Given these common practices, the Court should find that the questions raised in this case "are all susceptible to common answers across the two Restaurants" such that a class of employees from both locations may be certified. *Mangahas,* 2024 U.S. Dist. LEXIS 98151, at *24 (Plaintiffs "'convincingly establishe[d],' […] that Defendants enacted a single set of common practices—which were implemented across both

2

Restaurants and caused injury to all Tipped Workers in similar ways—such as including improperly tip-ineligible workers in tip pools, using deficient and inaccurate wage notices and wage statements […]." (quoting *Wal-Mart*, 564 U.S. at 355).

### ii. Plaintiffs have established commonality and typicality

In their moving brief, Plaintiffs outline several common policies that were implemented at both Sushi Katsuei restaurants. Pls.' Mem. at 7-16, 18-20. Given these common practices, Plaintiffs identified at least seven questions of fact and law that are susceptible to common proof for all putative class members. *Id*. at 19. In opposition, Defendants essentially concede that these common issues exist as they do not in any serious way deny Plaintiffs' common allegations or that any of the questions Plaintiffs identified are prone to common answers. Specifically, Defendants concede that they paid tipped employees bi-weekly until late 2022. They further concede that (with the exception of 2 employees out of at least 78 tipped employees who worked during the limitations period) all tipped employees were paid below minimum wage because Defendants applied a tip credit. Moreover, Defendants do not deny that they failed to provide employees with the required wage notices and wage statements. Finally, Defendants do not address Plaintiffs' allegation that a portion of all tipped employees' tips were illegally retained at SK Park Slope and, though Defendants argue the merits about whether M. Swe was improperly in the tip pool, they do not in any way claim that that issue is not apt to common resolution. In short, other than conclusory statements, Defendants do not deny that they applied common payroll policies.

Rather than substantively addressing these common/typical allegations head on, Defendants proffer several incoherent and misguided arguments that miss the mark. Specifically, they claim that commonality/typicality are not satisfied because: (1) Plaintiffs Tanchangya and R. Chakma performed different duties than the other Named Plaintiffs and Class Members, (2) SK

3

West Village paid two tipped employees above the minimum wage, (3) some of the Plaintiffs worked for Defendants when the Restaurants switched to a weekly pay structure, and (4) M. Swe's inclusion in the SK Park Slope's tip pool was lawful. Defs.' Mem. at 11-19.

Turning to the first "argument," it is a complete mystery as to why Defendants believe the fact that Plaintiff Tanchangya worked as a host for four weeks at the end of his employment somehow defeats commonality and typicality. Defendants admit that Tanchangya worked as server from 2017 until mid-2021 and they admit that he was paid pursuant to a tip credit wage for the entirety of his employment prior to May 2021. Defs.' Mem. at 4. Defendants provide no explanation as to why they believe Tanchangya's work as host has any bearing on this motion.

Likewise, it is also a mystery as to why Defendants believe that Plaintiff R. Chakma's job duties as a bartender somehow defeat commonality/typicality.[2] Defs.' Mem. at 12. Defendants do not deny that R. Chakma was paid pursuant to a tip credit wage throughout the entirety of his employment. Moreover, Defendants do not dispute that all Plaintiffs and putative class members (including Tanchangya and Chakma) were paid bi-weekly until October 2022, they all did not receive proper wage notices and statements, and they all shared their tips in a common tip pool. Defendants offer no arguments to the contrary. Even if they had done so, the law is clear that "[o]nce a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (quotations and citation omitted); *see also, e.g., Metcalf v. Transperfect Translations Int'l Inc.*, No. 19-cv-10104, 2024 U.S. Dist. LEXIS 50600, at *22 (S.D.N.Y. Mar. 21, 2024) ("to the extent that [defendant] argues that variation in working hours or

---

[2] It is worth noting that, in making this argument, Defendant Win appears to have perjured himself. Specifically, at deposition he was asked "Does the restaurant employ bartenders?" and he answered: "No." *See* Ex. 1 at 58:5-7. However, now in his sworn declaration, he inexplicably claims that Sushi Katsuei *did* employ bartenders.

4

the employees' different departments defeats commonality and predominance, this is simply not the case as a matter of law"); *Shepard v. Rhea*, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014) ("[F]actual differences among the claims of class members do not preclude a finding of commonality.") (citation omitted).

Defendants' next argument that commonality/typicality are not met because *two* tipped employees at the Restaurant were paid above the tip credit minimum is the "exception[] that prove[s] the rule." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *222 (E.D.N.Y. Oct. 15, 2014). As an initial matter, Defendants are mistaken that two tipped employees were always paid above the tip credit wage rate as one of the individuals they identified, Phyu Ei Ei, *was* paid a tip credit wage rate during part of their employment. *See* Ex. 2. In any event, Defendants cannot escape the fact that other than these two individuals, Sushi Katsuei's common practice was to pay its tipped employees pursuant a tip credit minimum wage. Defendants' payroll records concretely establish that all tipped employees at SK Park Slope were paid pursuant to a tip credit, and at least 22 employees were paid pursuant to a tip credit at SK West Village. *See* Ex. 3. Moreover, Defendants have not pointed to one written tip credit notice that entitled them to pay any of these employees below the full minimum wage. Put simply, Defendants concede that at least 77 out of 78 tipped employees were paid the tip credit minimum wage despite never being provided with the requisite notices. The commonality of these 77 individuals is not undone by two outlier employees. *E.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 180914, at *219 ("Nothing in our class certification jurisprudence requires that every single class member suffer an impact or damages'). In fact, "[d]istrict courts in this and other Circuits have held that a class may be certified so long as a *de minimis* number of class members were uninjured or, conversely, virtually all class members were

injured." *In re Restasis Antitrust Litig.*, 335 F.R.D. 1, 17 (E.D.N.Y. 2020) ("There is, in short, no support for defendant's contention that the mere existence of uninjured class members in this putative class compels denial of [the plaintiffs'] motion") (citations omitted).

Defendants' argument that commonality and typicality are not met because some Plaintiffs worked for them when they changed their policy to pay weekly instead of biweekly is nonsensical, and they seem to misapprehend the nature of the class's frequency of pay claim. Specifically, Plaintiffs claim that defendants violated N. Y. Lab. Law § 191 by failing to pay them on a weekly basis. *See* N. Y. Lab. Law § 191(1)(a) (specifying that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned.") Defendants concede that from the start of the limitation period until late 2022 they paid all employees on a biweekly basis. In other words, Defendants admit they implemented a common practice of paying employees biweekly during that time and that practice was that was typical of all class members. The fact that some Plaintiffs continued to work for the restaurant after the changed this policy is obviously immaterial to the fact that this pay structure was common to all Class Members who were subject to it.

Defendants' final argument against commonality – that M. Swe was lawfully included in the tip pool – is a merits-based argument which is improper on a motion for class certification. Courts routinely certify a class where, as here, employees claim they were "denied tips that they were entitled to receive because they were required to share their gratuities with tip-ineligible employees." *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 U.S. Dist. LEXIS 136427, at *11 (S.D.N.Y. Sep. 28, 2015) (certifying a class on this basis); *see also, e.g., Shahriar*, 659 F.3d at 252 (typicality satisfied where "all [c]lass [m]embers were subject to the same tipping policies").[3]

---

[3] It bears emphasizing that Defendants only argue that Ms. Swe was tip eligible and do not marshal any arguments at all against Plaintiffs' more egregious claim that Defendants simply embezzled tips at SK Park Slope. *See, e.g.,*

6

Given that all of Defendants' arguments against commonality/typicality are without merit, the Court should find that Plaintiffs satisfied these factors.

### iii. Plaintiffs have established numerosity

Defendants' sole argument against numerosity is that the putative class is not numerous because there are not enough Class Members who were paid on a *weekly* basis at Sushi Katsuei. As outlined above, Defendants bizarrely get this claims backwards. Plaintiffs' claim is that Defendants owe putative class members liquidated damages for the time they were paid on a *bi-weekly* basis and Defendants do not deny that there were more than 40 individuals who were paid pursuant to that policy. Regardless, Defendants do not even attempt to address the fact that the putative class—which is indisputably comprised of more than 40 individuals—has other allegations (*e.g.*, they were paid pursuant to a tip credit, did not receive the appropriate wage notices and statements, and had their tips misappropriated at SK Park Slope). In other words, even if Defendants were correct that less than 40 individuals are entitled to N.Y. Lab. Law § 191 damages (they are not), there is no dispute that the putative class which is at least 78 individuals has other wage and hour claims. Accordingly, Defendants cannot escape that the class meets the numerosity requirement.

### iv. Defendants cannot avoid that common questions of law and fact predominate and a class action is superior to other methods of adjudication

Defendants' flimsy arguments that the predominance requirement is not met only serve to illustrate that Plaintiffs have, in fact, met their burden. Specifically, Defendants' first and third arguments against predominance are essentially a rehash of two of their arguments against commonality/typically, namely, that two of the Plaintiffs had different duties for certain time

---

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (finding commonality and typicality met where all class members were subject to the same policies regarding their employers' retention of alleged gratuities).

7

periods, and that M. Swe was properly included in the tip pool. Defs.' Mem. at 19-22. Defendants, of course, fail to explain how either of these issues force the Court to find predominance is not satisfied. *Id*. In any event, as outlined above, the law is clear that individualized differences between class members do not defeat certification and merits-based arguments are not appropriately considered at the certification stage.

Defendants only other claim against predominance is that Plaintiffs "performed different number of shift(s)" [sic] and that "some of the Plaintiff(s) only worked as a part-time server" [sic]. *Id*. at 20-21. However, Defendants again fail to explain why these facts should preclude the Court from finding that common legal and factual issues predominate here. Regardless, the law is clear that "[w]here plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied . . . ." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-cv-1347, 2024 U.S. Dist. LEXIS 48475, at *19 (S.D.N.Y. Mar. 18, 2024) (citations omitted); *see also, e.g., Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 49 (E.D.N.Y.2010) ("[D]ifferences among class members as to the number of hours worked, the precise work they did and the amount of pay they received concern the amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (differences such as "the number of hours worked, the precise work [employees] did, and the amount of pay they received concern the amount of damages," and such "individual questions with respect to damages will not defeat class certification[.]"). In fact, courts find that common questions of liability concerning whether class members were properly paid the minimum wage and for overtime "are about the most perfect questions for class treatment." *Iglesias-Mendoza*, 239 F.R.D. at 373; *see also, e.g., Fonseca*, 2015 U.S. Dist. LEXIS 136427, at *13 ("District courts 'have routinely found

8

that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'") (quoting *Murphy v. Lajaunie*, No. 13-cv-6503, 2015 U.S. Dist. LEXIS 97531, at *18 (S.D.N.Y. July 24, 2015) (Sullivan J.) (collecting cases)).

Next, Defendants halfhearted argument that "because of the reasons stated above" certifying a class would not be the superior method of adjudicating this case (Defs.' Mem. at 23) should similarly be rejected. Again, Defendants utterly fail to explain why, in their opinion, any of these "reasons" militate against a finding of superiority.

Finally, Defendants' argument that a class action is not superior because Plaintiffs should have to first pursue administrative remedies is simply wrong. *Id*. Courts in this Circuit routinely certify classes of employees alleging wage and hour claims—including the precise types of claims against restaurants alleged here—without requiring these employees to first exhaust their administrative remedies prior to seeking class certification. *E.g., Shahriar*, 659 F.3d; *Fonseca*, 2015 U.S. Dist. LEXIS 136427; *Murphy*, 2015 U.S. Dist. LEXIS 97531; *Gonzalez*, 2024 U.S. Dist. LEXIS 48475; *Spicer*, 269 F.R.D at 339.[4] Thus, for all the reasons set forth in Plaintiffs' original moving papers and Defendants' complete failure to proffer any coherent arguments to the contrary, the Court should find that Plaintiffs satisfy the predominance and superiority requirements.

## II. CONCLUSION

For all of the foregoing reasons, the motion should be granted in full.

---

[4] Defendants' reliance on *Alix v. Wal-Mart Stores, Inc*., 57 A.D.3d 1044, 1048, 868 N.Y.S.2d 372, 376 (3d Dep't 2008) is misplaced. Since that decision, numerous courts have explained that decision to be that because predominance and superiority had not been established there, the plaintiffs in that case should have exhausted their administrative remedies. The case does not stand for wrongheaded proposition that an "administrative remedy available to the class is superior to the class action process" (Defs.' Mem. 23) and thus that wage and hour cases must be litigated via the NY Department of Labor rather than as federal court class actions. *See, e.g., Spicer*, 269 F.R.D. at 339 (rejecting claim that Plaintiffs had to exhaust administrative remedies prior to pursuing wage and hour class action); *Krebs v. Canyon Club, Inc*., 2009 NY Slip Op 50291(U), 22 Misc. 3d 1125(A), 880 N.Y.S.2d 873 (Sup. Ct.) (same).

Dated: September 10, 2024
New York, NY

By: *s/ Josef Nussbaum*
D. Maimon Kirschenbaum
Josef Nussbaum
**JOSEPH & KIRSCHENBAUM LLP**
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640 Phone
(212) 981-9587 Fax

*Attorneys for Plaintiffs and the proposed Class*