UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUPAN CHAKMA, SULOY TRIPORA, TAPAN KANTI TANCHANGYA, TIYANIT KAEWPAN, and PRAMITA CHAKMA, *on behalf of themselves and others similarly situated,*<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　　　-v.-<br><br>SUSHI KATSUEI, INC. *d/b/a* SUSHI KATSUEI PARK SLOPE, ROYAL KATSUEI, INC. *d/b/a* SUSHI KATSUEI WEST VILLAGE, AYE AYE SWE, and AUNG KO WIN,<br><br>　　　　　　　　Defendants. | 23 Civ. 7804 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Rupan Chakma ("R. Chakma"), Suloy Tripora ("Tripora"), Tapan Kanti Tanchangya ("Tanchangya"), Tiyanit Kaewpan ("Kaewpan"), and Pramita Chakma ("P. Chakma") (collectively, "Plaintiffs"), bring this action against Sushi Katsuei, Inc. ("Sushi Katsuei"), Royal Katsuei, Inc. ("Royal Katsuei"), Aye Aye Swe ("Swe"), and Aung Ko Win ("Win") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). In brief, Plaintiffs allege that Defendants violated labor laws by paying servers on a biweekly basis; paying servers pursuant to a tip credit without providing the requisite notice; failing to provide servers with required wage notices and wage statements; and misappropriating a portion of servers' tips.

Now before the Court is Plaintiffs' motion, pursuant to Federal Rule of Civil Procedure 23, for: (i) certification of their NYLL claims as a class action;

(ii) appointment of Plaintiffs as class representatives; (iii) appointment of Joseph & Kirschenbaum LLP as class counsel; (iv) an order requiring Defendants to produce a class list; and (iv) authorization for notice to all class members.  For the reasons that follow, Plaintiffs' motion is granted, subject to the modifications outlined herein.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Defendant Sushi Katsuei, Inc., a New York corporation, owns and operates the Sushi Katsuei restaurant located in the Park Slope neighborhood of Brooklyn ("SK Park Slope").  (AC ¶¶ 4-5).  Defendant Royal Katsuei, Inc., also a New York corporation, owns and operates the Sushi Katsuei restaurant located in the West Village neighborhood of Manhattan ("SK West Village").  (*Id.* ¶¶ 7-8).  Defendant Win is the president and owner of Sushi Katsuei, Inc.

---

[1]    This Opinion draws its facts from the Amended Complaint ("AC" (Dkt. #58)), which is the operative pleading in this case, and from the parties' submissions in connection with Plaintiffs' motion for class certification.  These submissions include: (i) the Declaration of Josef Nussbaum ("Nussbaum Decl." (Dkt. #38)) and the exhibits attached thereto; the Declaration of Pramita Chakma ("P. Chakma Decl." (Dkt. #39)); the Declaration of Rupan Chakma ("R. Chakma Decl." (Dkt. #40)); the Declaration of Tiyanit Kaewpan ("Kaewpan Decl." (Dkt. #41)); the Declaration of Suloy Tripura ("Tripura Decl." (Dkt. #42)); the Declaration of Tapan Kanti Tanchangya ("Tanchangya Decl." (Dkt. #43)); the Declaration of Diana Y. Seo ("Seo Decl." (Dkt. #49)) and the exhibits attached thereto; the Declaration of Aung Ko Win ("Win Decl." (Dkt. #50)); the Declaration of Aye Aye Swe ("Swe Decl." (Dkt. #51)); and the Declaration of Josef Nussbaum ("Nussbaum Reply Decl." (Dkt. #56)).

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of their motion for class certification as "Pl. Br." (Dkt. #37); to Defendants' memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #53); and to Plaintiffs' reply memorandum as "Pl. Reply" (Dkt. #55).  The Court notes that, because Defendants' memorandum of law in opposition to Plaintiffs' motion did not contain page numbers, citations to Defendants' memorandum refer to the page numbers supplied by the Court's electronic case filing ("ECF") system.

(Nussbaum Decl., Ex. 3 ("Win Dep.") 17:15-19:18), and Defendant Swe is the owner of Royal Katsuei, Inc. (*id.* at 26:15-19). Although the two restaurants are technically owned by separate corporate entities, Plaintiffs allege that Defendants Win and Swe, who are married, jointly own and operate the two establishments as a single integrated enterprise. (AC ¶¶ 10-11).

Plaintiffs are all former employees of SK Park Slope, who were employed as servers at the restaurant between 2017 and 2023 for varying lengths of time. (AC ¶¶ 16-20, 36). Specifically, Tripora was employed by Defendants from late 2017 until mid-2023; Tanchangya was employed from late 2017 until March 2020, and then for two weeks in 2021; R. Chakma was employed from 2018 until 2023; Kaewpan was employed from 2021 until 2023; and P. Chakma was employed from February 2021 until August 2021. (*Id.*).

### 2.    The Allegations

In their Amended Complaint, Plaintiffs assert a FLSA claim for alleged illegal deductions from gratuities, on behalf of all tipped employees employed at Sushi Katsuei in Park Slope and/or the West Village within three years of the filing of the original complaint. (AC ¶ 22 (citing 29 U.S.C. § 216(b)); Dkt. #1 (original complaint filed on September 1, 2023)). Specifically, Plaintiffs allege that Defendants knowingly misappropriated gratuities belonging to Plaintiffs and putative FLSA collective action members, both by (i) retaining portions of pooled tips that rightfully belonged to servers or other employees that provided direct customer service, and (ii) sharing tips with a non-qualifying individual who served in a managerial role. (*Id.* ¶¶ 43-45, 53).

Plaintiffs also bring state-law wage and hour claims, on behalf of all tipped employees employed by Defendants at SK Park Slope and/or SK West Village within six years of the filing of the original complaint in this case. (AC ¶ 25). Plaintiffs contend that Defendants violated the NYLL in various ways, including by failing to pay Plaintiffs the full New York State minimum wage for all hours worked. (*Id.* ¶ 56). More specifically, Plaintiffs allege that Defendants paid Plaintiffs and putative class members lower than the full minimum wage, even though Defendants were not entitled to pay their tipped employees pursuant to a tip credit. (*Id.* ¶¶ 37-39; Win Dep. 64:22-65:1).[2]

Echoing their FLSA claims, Plaintiffs allege that Defendants also violated the NYLL by willfully diverting portions of Plaintiffs' and putative class members' tips. (AC ¶ 60). Plaintiffs were required to pool their tips each night, but at least 30% of the tip pool was not regularly distributed to servers or other employees that provided direct customer service. (*Id.* ¶ 43). Instead, these tips were allegedly retained by Defendants. This failure to properly distribute tips was made apparent, according to Plaintiffs, by the discrepancy between the amount of "Sushi Chef" tips listed on the restaurant's tip sheet, and the amount of tips actually distributed in employees' paychecks. (*See* Nussbaum

---

[2]    Plaintiffs offer two reasons why Defendants' tipped employees could not be paid pursuant to a tip credit. *First*, Defendants failed to provide their employees with the requisite tip credit notice, and thus Plaintiffs were unaware of their employer's obligations under applicable labor laws. (AC ¶¶ 38, 41). And while some employees did receive wage notices for at least certain time periods, Plaintiffs allege that these notices were deficient because they failed to provide key information relating to Plaintiffs' rights to additional wages and the tip credit amount. (Nussbaum Decl., Ex. 9, 10). *Second*, Defendants were not entitled to pay Plaintiffs pursuant to a tip credit because Plaintiffs spent more than 20% of their workdays performing non-tipped work. (AC ¶ 39).

Decl., Ex. 14 (comparing tips received with those distributed from September 20, 2021, to May 21, 2023)). Plaintiffs were also required to share their tips with at least one of the restaurant's general managers, an individual named Mia-Mia Swe ("M. Swe"), even though M. Swe supervised all aspects of the food-service employees' work and thus did not qualify as a tipped employee. (AC ¶ 45; *see, e.g.*, P. Chakma Decl. ¶¶ 5-13 (explaining M. Swe's managerial responsibilities); R. Chakma Decl. ¶¶ 5-15 (same)).

Finally, Plaintiffs allege significant shortcomings in Defendants' payroll procedures. For instance, Plaintiffs assert that Defendants did not provide Plaintiffs and other alleged class members with notices and wage statements, as required by New York Labor Law Sections 195(1) and 195(3), respectively. (AC ¶ 63). Plaintiffs also allege that Defendants failed to pay Plaintiffs on a weekly basis until 2022, and instead compensated employees on a bi-weekly basis, in violation of New York Labor Law Section 191(a)(1)(i). (*Id.* ¶¶ 130-131).

## B.    Procedural Background

Plaintiffs commenced this action on September 1, 2023, by filing the initial complaint. (Dkt. #1). Upon Defendants' appearance in the action, it was referred to mediation. (Dkt. #11). Defendants filed their answer to the complaint on October 26, 2023. (Dkt. #15). Mediation ultimately proved unsuccessful, and this case proceeded to discovery. (Dkt. #23). The parties twice filed requests for extensions of the discovery deadlines, which requests the Court carefully considered and ultimately granted. (Dkt. #26, 30).

While discovery was still ongoing, on May 15, 2024, Plaintiffs filed a letter motion for leave to file an amended complaint based on newly obtained information. (Dkt. #28). Defendants opposed this request. (Dkt. #29). At the post-fact conference held on July 2, 2024, the Court set a briefing schedule for Plaintiffs' motion to amend, as well as Plaintiffs' anticipated motion for class certification, and the case subsequently proceeded on these parallel tracks. (Dkt. #35; July 2, 2024 Minute Entry). With respect to the motion to amend, Defendants filed their further opposition to it on August 17, 2024 (Dkt. #46), and Plaintiffs filed their reply on August 30, 2024 (Dkt. #48). By lengthy endorsement on September 6, 2024, the Court granted Plaintiffs' motion to amend, finding that Plaintiffs had diligently pursued amendment after ascertaining new facts through discovery. (Dkt. #54). Plaintiffs proceeded to file their Amended Complaint, the operative pleading in this matter, on September 30, 2024. (Dkt. #58). Defendants filed their answer on October 14, 2024. (Dkt. #59).

In accordance with the Court's schedule, Plaintiffs filed the instant motion, seeking class certification under Rule 23, on August 2, 2024. (Dkt. #36-43). Defendants filed their opposition to Plaintiffs' motion for class certification on September 3, 2024. (Dkt. #49-51, 53). And Plaintiffs filed their reply on September 10, 2024. (Dkt. #55, 56).

## DISCUSSION

### A.    Applicable Law

"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006). The party seeking certification must establish that the proposed class meets all the requirements of Rule 23 by a "preponderance of the evidence." *Myers* v. *Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Under Rule 23(a), the moving party must make a threshold showing that:

> [i] the class is so numerous that joinder is impracticable; [ii] there are questions of law or fact common to the class; [iii] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [iv] the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These Rule 23(a) prerequisites — commonly referred to as numerosity, commonality, typicality, and adequacy — must be satisfied after "rigorous analysis." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 33. In addition to Rule 23(a)'s textual requirements, the Second Circuit also recognizes an implicit "ascertainability" requirement, whereby the proposed class must be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).

If the requirements of Rule 23(a) are met, "a plaintiff must also establish that the proposed class falls into one of the three categories set forth in Rule 23(b)." *Azor-El* v. *City of New York*, No. 20 Civ. 3650 (KPF), 2024 WL

4326921, at *7 (S.D.N.Y. Sept. 27, 2024).  Here, Plaintiffs seek to certify a class
under Rule 23(b)(3).  (Pl. Br. 1).  Rule 23(b)(3) provides that a class action "may
be maintained ... if the court finds [i] that the questions of law or fact common
to class members predominate over any questions affecting only individual
members, and [ii] that a class action is superior to other available methods for
fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).
While failure to prove any element of Rule 23 will preclude certification, actions
centering on wage and hour claims, such as this one, are considered
"especially suited to class litigation — perhaps the most perfect questions for
class treatment — despite differences in hours worked, wages paid, and wages
due." *Espinoza* v. *953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011)
(internal quotation marks omitted) (collecting cases).  "Specifically, failure to
pay proper minimum wages, time-shaving, improper tip pooling, and failure to
provide proper wage statements or wage and hour notices are [considered]
about the most perfect questions for class treatment."  *Gonzalez* v. *Hanover
Ventures Marketplace LLC*, No. 21 Civ. 1347 (ER), 2024 WL 1157074, at *4
(S.D.N.Y. Mar. 18, 2024) (internal quotation marks omitted).

 "Ultimately, the district court has broad discretion in deciding how and
whether to certify a class, arising from its 'inherent power to manage and
control pending litigation.'"  *In re Aluminum Warehousing Antitrust Litig.*, 336
F.R.D. 5, 37 (S.D.N.Y. 2020) (quoting *Myers*, 624 F.3d at 547).  This includes
the power to "alter or modify the class, create subclasses, and decertify the
class whenever warranted."  *Sumitomo Copper Litig.* v. *Credit Lyonnais Rouse,*

*Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001).  The same class certification requirements apply to the certification of subclasses: "a court must assure itself that each subclass independently meets the requirements of Rule 23." *Ramirez* v. *Riverbay Corp.*, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014) (citations omitted).

## B.    Analysis

With particular respect to their NYLL claims, Plaintiffs seek to certify a class that includes "all tipped food-service employees other than sushi chefs who worked for Defendants at the Sushi Katsuei restaurants at any time on or after September 1, 2017." (Pl. Br. 2).[3]  For the reasons set forth in the remainder of this Opinion, the Court grants Plaintiffs' motion, but modifies the proposed class to include a subclass of tipped food-service employees (other than sushi chefs) at SK Park Slope, who were subject to Defendants' tip-pooling system, at any time on or after September 1, 2017.

### 1.    Plaintiffs Satisfy the Requirements of Fed. R. Civ. P. 23(a)

#### a.    Numerosity

To meet the numerosity requirement of Rule 23(a)(1), the class must be so large that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  While the numerosity requirement is not "simply a numbers game," "[c]ourts have long applied a presumption that a class of forty members is

---

[3]    The Court notes that Plaintiffs' Notice of Motion (Dkt. #36) appears to contain a typographical error, and states that the proposed class encompasses on all qualifying individuals employed "on or after September 1, 2027."  The Court instead adopts the time frame for the proposed class as repeated throughout the memorandum of law that accompanied Plaintiffs' motion.  (Pl. Br. 1, 2).

sufficiently numerous." *Huang* v. *Shanghai City Corp*, No. 19 Civ. 7702 (LJL), 2022 WL 1468450, at *5 (S.D.N.Y. May 10, 2022) (citing *Robidoux* v. *Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  Plaintiffs proffer that the numerosity requirement is easily met in this case, as the proposed class contains at least 74 class members, and therefore far exceeds the number at which numerosity is presumed.  (Pl. Br. 17; Nussbaum Decl. ¶¶ 10-12 (explaining that Defendants have produced pay records from the class period for 52 servers from SK Park Slope and pay records for 24 servers from SK West Village)).  Moreover, Plaintiffs insist that the numerosity requirement is also met for a subclass consisting of Park Slope servers only, as employment records show that there are at least 58 individuals in this proposed subclass.  (*Id.* at 17-18).

The Court agrees.  In attempting to challenge numerosity, Defendants contend that the requirement cannot be met because "no more than three or four new servers joined Sushi Katsuei after it changed the frequency of payments [from biweekly to weekly] since October 31, 2022."  (Def. Opp. 20).  But this argument has the law exactly backwards.  It relies on Defendants' admission that "Sushi Katsuei changed the timing of [its] payment[s] from bi-weekly to weekly … on October 31, 2022."  (*Id.* at 8; Win Decl. ¶ 35 (explaining that Sushi Katsuei began paying servers on a weekly basis on October 31, 2022, after Win "learned … that the restaurant servers were supposed to be paid on a weekly basis")).  This change, of course, impacted those Plaintiffs who continued their employment after this date, including Kaewpan, Tripora, and R. Chakma.  (Def. Opp. 8-9).  However, Plaintiffs' allegations of misconduct

cover the period *preceding* October 31, 2022, *i.e.*, the period during which Defendants admit they were paying Plaintiffs and putative class members on a biweekly basis.  (*See* Pl. Br. 1 (seeking certification for food-service employees who worked at Sushi Katsuei at any time on or after September 1, 2017)).  As such, members of the class can rightfully include those who were employed by Sushi Katsuei prior to the restaurants' purported policy change.  Moreover, as Plaintiffs point out, Defendants' arguments regarding numerosity fail to recognize that Plaintiffs have alleged a class based on *other* wage and hour claims, which, based on the records provided by Plaintiffs, result in a class and subclass far surpassing 40 members.  (*See* Pl. Reply 7).  And, as mentioned, the subclass of employees at SK Park Slope independently satisfies the numerosity requirement, as there would be "at least 58 individuals" in this subclass.  (Pl. Br. 18).

The Court further finds that joinder of all the putative class members would be impracticable, which supports a finding of numerosity.  The putative class members are all restaurant workers who allege labor law violations.  In these circumstances, "[t]here is every reason to believe [that class members] lack the financial resources to independently participate in the litigation through joinder."  *Mangahas* v. *Eight Oranges Inc.*, No. 22 Civ. 4150 (LJL), 2024 WL 2801922, at *5 (S.D.N.Y. May 31, 2024); *see also Carollo* v. *United Cap. Corp.*, 528 F. Supp. 3d 37, 53 (N.D.N.Y. 2021) ("[T]he very nature of this case — an employer allegedly taking advantage of minimum-wage workers — also suggests that the proposed class may lack the financial capabilities to

bring lawsuits individually."). Accordingly, the Court finds that the proposed class and subclass satisfy the numerosity requirement.

### b.    Commonality

Rule 23(a)(2) requires that the putative class members' claims share "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this requirement, Plaintiffs must affirmatively demonstrate, by a preponderance of the evidence, "the ability of the action to 'generate common *answers* apt to drive the resolution of the litigation.'" *Elisa W.* v. *City of N.Y.*, 82 F.4th 115, 123 (2d Cir. 2023) (quoting *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 350 (2011)). When conducting a commonality inquiry, a court must engage in "rigorous analysis," which will often "entail some overlap with the merits of plaintiffs' underlying claims." *Id.* (quoting *Dukes*, 564 U.S. at 351). Importantly, the requirement of commonality is met where, although individual experiences and conditions may differ, the class members' injuries "derive from a unitary course of conduct by a single system." *Marisol A.* v. *Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). In wage and hour cases in particular, "the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic* v. *Laura Christy LLC*, 329 F.R.D. 61, 69 (S.D.N.Y. 2018) (quoting *Spencer* v. *No Parking Today, Inc.*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 1040052, at \*15 (S.D.N.Y. Mar. 15, 2013), *report and recommendation adopted*, No. 12 Civ. 6323 (ALC) (AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013)).

Plaintiffs contend that commonality has been satisfied here because Defendants implemented a common policy at both SK Park Slope and SK West Village with respect to the alleged wage and hour practices. (Pl. Br. 19). In doing so, Plaintiffs highlight several questions that would be subject to common resolution, should this case proceed as a class action. Those questions include:

> [i] Whether Defendants constitute a single employer; [ii] [w]hether Defendants' use of the tip credit was lawful; [iii] [w]hether Defendants' biweekly pay scheduled was unlawful; [iv] [w]hether Defendants provided Class Members with wage notices that complied with N.Y. Lab. L. § 195(1); [v] [w]hether Defendants provided Class Members with wage statements that complied with N.Y. Lab. L. § 195(3); [vi] [w]hether M. Swe was illegally included in the SK Park Slope tip pool; and [vii] [w]hether Defendants retained a portion of tips at SK Park Slope.

(*Id.*).[4]  The Court agrees that these common questions are central to this action, and that such claims are commonly found to satisfy Rule 23(a)(2)'s requirements. *See, e.g.*, *Masoud* v. *1285 Bakery Inc.*, No. 15 Civ. 7414 (CM), 2017 WL 448955, at *5 (S.D.N.Y. Jan. 26, 2017) (finding commonality when common questions spoke to "whether the employer had company-wide

---

[4]    The Court briefly notes that there is an important state-law question that remains undecided and that has the potential to impact Plaintiffs' claims regarding biweekly pay.  New York state courts are currently divided on whether a private right of action exists to recover damages for an employer's failure to pay timely wages pursuant to NYLL § 191.  *Compare Vega* v. *CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288-89 (1st Dep't 2019) (finding a private right of action for a violation of NYLL § 191), *with Grant* v. *Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 122 (2d Dep't 2024) (finding no private right of action for a violation of NYLL § 191).  The New York Court of Appeals has not yet addressed this split.  However, neither party has raised this issue in the briefing for the current motion, and the Court does not find it necessary to analyze it further at this time.  For purposes of this motion, the Court simply notes that this is a common legal question that will ultimately require resolution.

compensation policies that injured the potential class"); *Canelas* v. *World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *5 (S.D.N.Y. Mar. 31, 2017) (finding commonality requirement "easily" met "because all of [p]laintiffs' claims derive[d] from the same wage and hour policies").  This is because the claims of Plaintiffs and putative class members arise from a common wrong: Defendants' failure to implement fair wage and labor practices.  *See Shahriar* v. *Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (affirming a district court's finding of commonality because the "NYLL class claims all derive[d] from the same compensation and tipping practices"); *Espinoza*, 280 F.R.D. at 127 ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification.").

In attempting to refute commonality, Defendants point to supposed differences among the Plaintiffs.  For instance, Defendants assert that certain Plaintiffs "received their compensation on a *bi-weekly basis* <u>but</u> began receiving their compensation on a *weekly basis* since October 31, 2022" (Def. Opp. 17 (emphases in original)), and that Plaintiff Tanchangya worked as a host between May 17, 2021, and June 13, 2021, and thus did not receive tips for this period (*id.*).  But Defendants are wrong to suggest that commonality requires uniformity of claims.  Rather, differences are allowed to exist among employees, including with regard to "responsibilities, hours worked, and salaries," as long as these differences are "relatively minor and relate primarily to the level of damages" owed to each individual.  *Noble* v. *93 Univ. Place Corp.*,

14

224 F.R.D. 330, 342-43 (S.D.N.Y. 2004); *see also Ansoumana* v. *Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y. 2001) ("The differences among the [p]laintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual [p]laintiff might be entitled if and when liability is found. 'It is well-established that individual questions with respect to damages will not defeat class certification … unless that issue creates a conflict which goes to the heart of the litigation.'" (quoting *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 196 (S.D.N.Y. 1985)); *Vargas* v. *Howard,* 324 F.R.D. 319, 326 (S.D.N.Y. 2018) ("'[T]he differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual may be entitled if and when liability is found,' and not whether there are common questions of law and fact." (quoting *Ansoumana*, 201 F.R.D. at 86)). Defendants merely raise factual distinctions that may impact the amount of damages, if any, that class members can ultimately recover. As such, these alleged differences do not defeat a finding of commonality.

Defendants also dispute commonality by arguing that M. Swe lawfully participated in the tip pool. In other words, Defendants assert that M. Swe primarily worked as a server, and thus only participated in the tip pool on days when she mostly partook in tipped work. (Def. Opp. 18-19). Defendants' efforts once again miss the mark. To begin, the tenability of Plaintiffs' allegations involving tip misappropriation goes to the merits of their claims,

which will be decided in due course during this litigation. (*Id.*). *See In re Initial Pub. Offering Sec. Litig.*, 471 F.3d at 41 (explaining that "a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement"). Moreover, courts routinely certify classes based on the common question of whether employees were denied tips because they were required to share gratuities with tip-ineligible employees. *See Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011) (finding commonality when class members "share[d] the common determination of [d]efendants' practices with respect to the handling and distribution of gratuities"); *Zivkovic*, 329 F.R.D. at 69 (finding the issue of "whether [d]efendants illegally took the tip credit … will produce answers that apply to all plaintiffs").

Finally, the Court notes that Plaintiffs have established commonality between the two Sushi Katsuei locations, such that "the practices at each" of the restaurants' locations "can also be said to derive from the same policy that violates the labor laws." *Mangahas*, 2024 WL 2801922, at *7. As Plaintiffs explain, the single integrated employer rule holds that legally distinct entities can be liable as a single employer when those "entities are a single integrated enterprise, as in the case of 'parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management.'" *Morales* v. *Anyelisa Rest. Corp.*, No. 18 Civ. 7641 (JGK), 2019 WL 3430106, at *2 (S.D.N.Y. July 30, 2019) (quoting *Arculeo* v. *On-Site Sales & Mktg., LLC*, 425

F.3d 193, 198 (2d Cir. 2005)).[5]  Whether a group of entities qualifies as a single
integrated enterprise turns on four-factors: (i) interrelation of operations;
(ii) centralized control of labor relations; (iii) common management; and
(iv) common ownership or financial control.  *Id.* (citing *Brown* v. *Daikin Am.
Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)); *see also Jackson* v. *Total Relocation
Servs., LLC*, No. 23 Civ. 4118 (KPF), 2024 WL 4850814, at *6 n.3 (S.D.N.Y.
Nov. 21, 2024) (discussing distinction between "single entity" doctrine of
employment and "economic reality" theory of employment).

    In this case, Plaintiffs have "convincingly establishe[d]," *Dukes*, 564 U.S.
at 355, that Defendants acted as a "single set with common practices — which
were implemented across both [r]estaurants and caused injury to all [servers]
in similar ways," *Mangahas*, 2024 WL 2801922, at *7.  Specifically, Plaintiffs
have alleged that Defendants have interrelated operations, even though,
technically, Defendant Win is the sole shareholder, operator, and manager of
Sushi Katsuei, and Defendant Swe is the sole shareholder, operator, and
manager of Royal Katsuei.  (Def. Opp. 4-5).  The evidence offered in support of
Plaintiffs' assertion is substantial.  *First*, Plaintiffs allege that Defendants had a
"centralized control of labor relations."  (Pl. Br. 5).  Plaintiffs demonstrate this

_____

[5]    Although the Second Circuit has "yet to apply the single integrated enterprise rule to
       FLSA liability," district courts "have applied the single integrated enterprise rule in the
       FLSA context." *Morales*, 2019 WL 3430106, at *2 (collecting cases).  "The considerations
       that should inform a court's determination as to whether two corporations may be
       treated as a single employer are the same under both FLSA and the NYLL." *Cuji* v.
       *Sistina Restaurant Inc.*, No. 20 Civ. 5594 (AJN) (DF), 2021 WL 11493286, at *4 (S.D.N.Y.
       Aug. 2, 2021) (citing *Benzinger* v. *Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99
       (S.D.N.Y. 2020) (analyzing whether separate entities were a "single integrated
       enterprise" pursuant to both FLSA and NYLL)).

centralized control by pointing out that both restaurants relied on the same person (Kevin Sea) to oversee their payroll practices, and both implemented the same "idiosyncratic pay practices." (*Id.*; *see also* Win Dep. 79:21-80:12 (explaining that both restaurants shared the same accountant)). For example, in January and February 2018, both restaurants paid putative class members an hourly rate of $9.80, rather than the then-applicable tip credit minimum wage ($8.65) or the full minimum wage ($13.00). (Pl. Br. 5). *Second*, the restaurants are alleged to be jointly operated, with the two establishments sharing the same name, specializing in the same omakase dining experience, sharing the same website, and marketing themselves as related. (*Id.* at 6; Nussbaum Decl., Ex. 6 (showing that the menus of both restaurants shared the same branding and presented similar dining options)). Articles promoting the restaurants further the perception that the two establishments are jointly operating, as the articles note that Sushi Katsuei's West Village location is the "second location" of the popular Park Slope eatery. (Nussbaum Decl., Ex. 16; *see also id.*, Ex. 17 (referencing Swe as "[o]ne of the owners" of SK Park Slope)). *Third*, there is a strong familial relationship between the restaurants, inasmuch as Defendants Win and Swe are married. (Pl. Br. 6 (citing Win Dep. 10:18-23)). And even though Win and Swe purport to operate the restaurants entirely separately, Win was paid $277,455.80 by SK West Village in 2023. (*Id.*). Conversely, various Plaintiffs averred that Swe is regularly present at SK Park Slope, where she actively supervises the restaurant's employees and operations. (*Id.* at 7 (citing, *inter alia*, P. Chakma Decl. ¶¶ 14-18; R. Chakma

18

Decl. ¶¶ 16-20; Kaewpan Decl. ¶¶ 15-16, 19-23)).  M. Swe also testified to this effect.  (Nussbaum Decl., Ex. 5 ("M. Swe Dep.") 18:21-25 (explaining that Swe works at the Brooklyn restaurant)).  This evidence, when viewed together, provides sufficient support for the allegation that Defendants operated as a single integrated employer.[6]

Defendants attempt to counter these allegations by noting that, although Win and Swe share a family relationship, "each of them operated his or her own restaurant separately and independently from each other."  (Def. Opp. 5, 27).  Defendants also point out that while the two restaurants share a website, they maintain separate websites to receive customers' reservations, list their own menus, and list different days and hours of operation.  (*Id.* at 5).  They note that the restaurants employ different individuals and have "completely separate pay practices" because "Royal Katsuei paid its servers based on their skills and qualifications."  (*Id.* at 27).  However, Defendants' assertions are belied by the record detailed above, as well as the statements of Kaewpan and Tanchangya, which statements contradict the premise that the employee pool between the two restaurants was entirely distinct.  (Kaewpan Decl. ¶ 27 (explaining that Win offered him a position at either Sushi Katsuei location during his interview); Tanchangya Decl. ¶ 21 (stating that Swe asked twice if he

---

[6]     The Court notes that it is not finding that Defendants actually operated as a single integrated employer, as such a determination is not appropriate on a motion for class certification.  *See Tiro* v. *Pub. House Invs., LLC*, 288 F.R.D. 272, 279 (S.D.N.Y. 2012) (whether defendants were single integrated enterprise involved fact-specific inquiry not properly determined at Rule 23 class certification stage of litigation). Rather, the Court finds that Plaintiffs have sufficiently pleaded that the two restaurants *may* operate as a single integrated enterprise for purposes of class certification.

wanted to work at the Manhattan location of Sushi Katsuei)).  Plaintiffs have therefore sufficiently alleged that members of the proposed class share claims with common questions of both law and fact, as the core of each claim is the legality of Defendants' employment policies and practices.

### c.    Typicality

Pursuant to Rule 23(a)(3), Plaintiffs must show that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol*, 126 F.3d at 376 (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "Rather than focusing on the precise nature of plaintiffs' injuries, the typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system.'"  *Floyd* v. *City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012) (quoting *Marisol*, 126 F.3d at 377).  The requirements for commonality and typicality "tend to merge in the Second Circuit's class certification inquiry."  *Iglesias-Mendoza* v. *La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007).

Like commonality, the typicality requirement is satisfied here because the deposition testimony, declarations, and ample other evidence demonstrate that Sushi Katsuei employees in both locations were subject to common wage policies.  The central inquiry when evaluating typicality is whether "each class member's claims arise from the same course of events and each class member

makes similar legal arguments to prove defendant's liability." *Espinoza*, 280
F.R.D. at 127-28 (citation omitted).  Here, Plaintiffs allege that putative class
members worked at two restaurants that were operated by the same
individuals and subject to the same working conditions.

Defendants' attempt to raise "minor variations in the fact patterns
underlying individual claims" does not alter this.  *Orellana* v. *One If By Land
Restaurant LLC*, No. 18 Civ. 7865 (VSB), 2020 WL 5768433, at *7 (S.D.N.Y.
Sept. 27, 2020) (quoting *Robidoux*, 987 F.2d at 936-37); *see also Whitehorn*,
275 F.R.D. at 199 ("'[D]ifferences among the [p]laintiffs as to the number of
hours worked, the precise work they did, and the amount of pay they received
concern the amount of damages to which any individual Plaintiff might be
entitled,' but do not defeat typicality for Rule 23 purposes." (quoting
*Ansoumana*, 201 F.R.D. at 86)).  For example, whether Plaintiff Tanchangya
worked as a tipped employee "around the end of his employment at the
restaurant" does not bear on whether Tanchangya was harmed by Defendants'
labor practices during his four years of employment at Sushi Katsuei, the vast
majority of which involved compensation pursuant to a tip credit wage.  (Def.
Opp. 14).  Nor does the fact that R. Chakma worked as a bartender, and thus
performed different work functions compared to other servers, bear on whether
he was harmed by Defendants' labor practices, especially when Defendants do
not dispute that he still performed work as a tipped employee, subject to the
same wage and hour violations.  (*Id.* at 15-16).  *See Espinoza*, 280 F.R.D. at
128 (finding typicality satisfied despite differences in damages).

21

Perhaps Defendants' most forceful argument against typicality is that certain servers at SK West Village were paid based on a different policy, subject to their "individual[] skills and qualification[s]." (Def. Opp. 15). However, this argument fails, too. Defendants merely point to two servers at SK West Village who were allegedly paid above the tip credit minimum. Not only do Plaintiffs challenge the validity of this fact (Pl. Reply 5), but even if this were the case, such a claim would not defeat typicality, *see Mangahas*, 2024 WL 2801922, at *7 ("All that is necessary is that there be 'some glue,' holding together the practices at each of the Restaurants [included in a labor law class action] such that they can also be said to derive from the same policy that violates the labor laws." (internal citations omitted)). Slight differences among the wages paid to certain class members are not sufficient to defeat typicality. This is especially so because, as noted, Plaintiffs have proffered evidence that the two restaurants were run in an integrated fashion and had common policies. Accordingly, Plaintiffs have therefore met the "not highly demanding" standard of typicality under Rule 23(a)(3). *Bolanos* v. *Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties [in a class action] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When conducting the adequacy inquiry, courts must consider whether (i) "plaintiff[s'] interests are antagonistic to the interest of other members of the class" and (ii) "plaintiff[s'] attorneys are qualified, experienced

and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). The adequacy analysis is intended "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc.* v. *Windsor*, 521 U.S. 591, 625 (1997).

Here, there is no dispute as to the qualifications of the proposed class counsel. (*See generally* Def. Opp.). Joseph & Kirschenbaum LLP is an experienced employment law firm, one that has repeatedly been appointed as class counsel by courts in this District. (Pl. Br. 24 (citing, *inter alia, Argudo* v. *Parea Group LLC*, No. 18 Civ. 678 (JMF), 2019 WL 4640058, *5 (S.D.N.Y. Sept. 24, 2019); *Schear* v. *Food Scope America, Inc.*, 297 F.R.D. 114, 127 (S.D.N.Y. 2014))). Moreover, counsel has "recovered over $100 million for thousands of workers" through wage and hour class and collective litigation. (Nussbaum Decl. ¶¶ 35-37). The Court has no doubt that counsel will continue to vigorously litigate this case.

Although Defendants do not specifically dispute adequacy (*see generally* Def. Opp.), Defendants do raise concerns throughout their brief about that fact that none of the Plaintiffs worked at SK West Village. (*See, e.g.*, Def. Opp. 4, 6, 26, 28). As such, the Court briefly notes that this fact does not defeat adequacy. There is no material conflict among the class members' positions because, as the Court has previously addressed, Plaintiffs have alleged that Defendants operated a single integrated employer. *See Mangahas*, 2024 WL 2801922, at *10 (finding adequacy satisfied for a class encompassing employees at two restaurant locations). As such, Plaintiffs are capable of

representing the employees of both restaurants, who were subject to the same alleged misconduct. And since Plaintiffs were all employed at SK Park Slope, Plaintiffs can therefore adequately represent the interests of the subclass, of which each Named Plaintiff is expected to be a member. Because Plaintiffs have demonstrated that they have "no conflict with any Class Members [or subclass members]" and are prepared to adequately protect the interests of the class (Pl. Br. 21), the Court finds that Plaintiffs have demonstrated adequacy of representation sufficient to satisfy the requirements of Rule 23(a)(4).

### e. Ascertainability

In addition to the explicit Rule 23 requirements, courts in this Circuit have also required "ascertainability." *See, e.g.*, *In re Petrobras Sec.*, 862 F.3d at 257, 264. Specifically, the Second Circuit has found this implied requirement of ascertainability dictates that "a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Martinez* v. *JLM Decorating, Inc.*, No. 20 Civ. 2969 (RA), 2024 WL 1193605, at *2 (S.D.N.Y. Mar. 20, 2024) (quoting *In re Petrobras Sec.*, 862 F.3d at 260). This is considered a "modest threshold requirement that will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d at 269.

Defendants do not challenge ascertainability. Nor should they. Courts in this District routinely find ascertainable classes in wage and hour cases. *See, e.g.*, *Espinoza*, 280 F.R.D. at 127 n.85 (finding ascertainability satisfied

because the class was "easily identified from [the employer's] payroll records");
*Lin* v. *Benihana N.Y. Corp.*, No. 10 Civ. 1335 (RA) (JCF), 2012 WL 7620734, at
*12 (S.D.N.Y. Oct. 23, 2012) (finding the class ascertainable because
"[m]embership in the class can be ascertained by objective documentation,
such as the defendants' payroll records and wage statements; and no
subjective criteria are required to determine the class'[s] contours"), *report and
recommendation adopted*, No. 10 Civ. 1335 (RA) (JCF), 2013 WL 829098
(S.D.N.Y. Feb. 27, 2013).  Here, determining whether a prospective class
member qualifies for the class and subclass can be resolved by reference to
objective criteria, including, *inter alia*, whether the prospective member was a
server at either restaurant location, and whether the prospective member was
employed during the relevant time period.  Because the proposed class
members are easily identifiable from Defendants' records (*see* Pl. Br. 22), the
Court finds the ascertainability requirement — and, indeed, all of the
Rule 23(a) requirements — satisfied.

### 2.    Plaintiffs Satisfy the Requirements of Fed. R. Civ. P. 23(b)

The Court must now consider whether the proposed class and subclass
fall within one of the three categories defined in Rule 23(b).  Here, Plaintiffs
seek certification pursuant to Rule 23(b)(3), which requires Plaintiffs to satisfy
predominance and superiority requirements.  The Court finds these
requirements to be satisfied on this record.

### a.    Predominance

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown* v. *Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (citing *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006)).  The purpose of this requirement is to limit class certification to only those cases where it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Mazzei* v. *Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (citation and quotation marks omitted).  The Supreme Court has noted that the standard for predominance under Rule 23(b)(3) is considerably "more demanding" than the commonality requirement of Rule 23(a).  *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 34 (2013); *accord Amchem*, 521 U.S. at 623-24 ("Even if Rule 23(a)'s commonality requirement may be satisfied …, the predominance criterion is far more demanding.").

Plaintiffs emphasize, in support of their claim of predominance, that "[c]ourts routinely find that common questions predominate in wage and hour actions brought on behalf of class employees challenging the same allegedly illegal policies and practices."  (Pl. Br. 23).  Plaintiffs are correct — particularly because they have identified several policies that appear common across both restaurants, including whether Defendants unlawfully paid class members on a biweekly basis, whether Defendants impermissibly paid class members

pursuant to the tip credit, and whether Defendants failed to give class members proper wage notices and statements. (*See generally* Pl. Br. 7- 13). Such allegations are frequently found to satisfy the predominance requirement. *See, e.g.*, *Lizondro-Garcia* v. *Kefi LLC*, 300 F.R.D. 169, 177 (S.D.N.Y. 2014) ("Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment.'" (quoting *Iglesias-Mendoza*, 239 F.R.D. at 373)); *Chang* v. *Philips Bryant Park LLC*, No. 17 Civ. 8816 (LTS) (SLC), 2019 WL 8105999, at *12 (S.D.N.Y. Oct. 23, 2019) (finding predominance satisfied in a case involving questions about employment practices, including whether the defendants "failed to provide sufficient wage notices and wage statements"), *report and recommendation adopted*, No. 17 Civ. 8816 (LTS) (SLC), 2020 WL 104812 (S.D.N.Y. Jan. 9, 2020).

Here, to ensure that common issues do in fact predominate, the Court will require the creation of a subclass. This subclass will include all tipped food-service employees other than sushi chefs employed by Defendants at Sushi Katsuei's restaurant in Park Slope, and it is for the specific purpose of resolving Plaintiffs' allegations of tip misappropriation. The remainder of the Plaintiffs' claims are susceptible to resolution on a class-wide basis, on the theory that the two restaurants were operating as a single integrated enterprise. The Court creates a subclass for purposes of the tip allegations because, as Plaintiffs allege throughout their brief, the challenged tipped practices only occurred at SK Park Slope. (*See, e.g.*, Pl. Br. 13-16). None of the

allegations relating to misconduct in distribution of the tip pool system appears to relate to SK West Village.  (*Id.*).

Courts frequently create subclasses in circumstances such as these, where a subclass might help resolve "any differences in management or policies."  *Zivkovic,* 329 F.R.D. at 70; *see also Tiro* v. *Pub. House Invs., LLC*, 288 F.R.D. 272, 281 (S.D.N.Y. Dec. 4, 2012) (creating a subclass and finding predominance in a case involving "an additional issue concerning tip misappropriation and stealing").  This proposed subclass independently meets the requirement of predominance (in addition to all the requirements of Rule 23(a)).  All members of the subclass were employed at SK Park Slope, which allegedly implemented the same illegal practices with regard to the retention or misappropriation of tips.  *See Shahriar*, 659 F.3d at 253 (finding that "class-wide issues predominate" where "Plaintiffs have alleged that all servers were subject to [the restaurant's] uniform tip-sharing or tip-pooling system").

In arguing against predominance, Defendants reprise many of their arguments against commonality and typicality.  These include the argument that, while Tanchangya worked as a server at Sushi Katsuei from April 25, 2017, until March 16, 2020, he worked *as a host* from May 17, 2021, until June 13, 2021.  (Def. Opp. 22 (citing Win Decl. ¶ 22)).  In addition, during his time as a host, Tanchangya received different compensation for his work, and did not receive any tips.  (*Id.*).  In a similar vein, Defendants renew the point that R. Chakma worked primarily as a bartender.  (*Id.* at 23).  Defendants also

28

argue that differences existed among the various Plaintiffs because the individuals worked different numbers of shifts, and, specifically, Kaewpan worked as a "part-time server." (*Id.*).  Finally, Defendants rehash their arguments regarding M. Swe, alleging that (i) she only received tips on the days that she did not work as a server and (ii) her good nature and willingness to pitch in as needed were reasons employees wrongly assumed she held a managerial role.  (*Id.* at 24-25).

Defendants' arguments fail here, too, for many of the same reasons previously discussed.  Beginning with Defendants' factual assertions, the Court notes that the proffered variations among Plaintiffs do not defeat predominance because Defendants point to no more than slight differences in schedules and compensation.  Put somewhat differently, Defendants fail to demonstrate that Plaintiffs were not subject to the same policies or that substantial elements of the claims would require individualized, rather than generalized, proof.  *See Tiro*, 288 F.R.D. at 281 ("Variations in the number of hours worked goes to the question of damages and does not defeat predominance."); *Mangahas*, 2024 WL 2801922, at *12 ("[I]ndividualized questions regarding damages do not necessitate a finding that predominance is not met."); *Whitehorn*, 275 F.R.D. at 200 ("Like commonality, predominance is not defeated by the fact that potential plaintiffs worked at different restaurant locations and in different categories of tipped positions[.]").  Turning to Defendants' arguments regarding M. Swe, as previously discussed, the Court finds them to implicate merit-based determinations that do not prevent class certification.  *See supra* B.1.b.

Moreover, while Defendants do not include many case citations when arguing against predominance, the cases they do cite are inapposite. For example, in *Mike* v. *Safeco Insurance Co. of America*, the court found that the plaintiff had not established a sufficient basis to proceed with a "collective action" (as opposed to a class action) because the plaintiff failed to demonstrate that "there are other similarly situated individuals who should be invited to join th[e] action." 274 F. Supp. 2d 216, 220 (D. Conn. 2003). This was because, in the specific claim the plaintiff pursued, the "central question" was an individualized assessment of whether the "tasks … performed on a day-to-day basis were administrative or non-administrative." *Id.* This issue is not present here where, despite minor differences among class members (such as the number of days or hours worked), common questions of fact and law predominate. In *Novak* v. *Home Depot U.S.A., Inc.*, the court also found individual issues to predominate because "testimony seem[ed] to change with each individual" as to whether each Merchandising Assistant Store Managers "spent less than 40 percent of his or her workweek on non-exempt work." 259 F.R.D. 106, 115-16 (D.N.J. 2009). Again, no such concern is present here. The Court therefore finds that Plaintiffs have established by a preponderance of the evidence that predominant issues of fact and law are present in the instant action.

### b.    Superiority

Finally, under Rule 23(b)(3), the moving party must show "that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." *Johnson* v. *Nextel Commc'ns, Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Rule 23(b)(3) class actions "can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). In analyzing this requirement, courts must consider four nonexclusive factors:

> [i] the interest of the class members in maintaining separate actions; [ii] the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [iii] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [iv] the difficulties likely to be encountered in the management of a class action.

*In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 230 (internal quotation marks omitted).

In arguing against superiority, Defendants assert that a class action is not the superior method of litigating this case because Plaintiffs have an administrative remedy available to them. (Def. Opp. 26). That is, Defendants posit that putative class members could have filed claims with the New York State Department of Labor but failed to do so. (*Id.*). However, as Plaintiffs point out, there is no requirement in this District that individuals first exhaust available administrative remedies before pursuing wage and hour claims. (Pl. Reply 9). Defendants' reliance on *Alix* v. *Wal-Mart Stores Inc.*, 868 N.Y.S.2d 372, 376 (3d Dep't 2008), for this assertion is misplaced. That case involved "highly individualized determinations" that would have required a "fact-specific inquiry into each individual worker's circumstances." *Spicer* v. *Pier Sixty LLC*,

269 F.R.D. 321, 339 (S.D.N.Y. July 27, 2010) (distinguishing *Alix*).  The decision in *Alix* does not mean that wage and hour cases must be litigated via the New York Department of Labor, rather than as federal court class actions. *See Atakhanova* v. *Home Fam. Care, Inc.*, No. 16 Civ. 6707 (KAM) (RML), 2020 WL 4207437, at *9 (E.D.N.Y. July 22, 2020) (finding the *Alix* decision is "not binding on th[e] court" and is "distinguishable" from a case in which "the potential class members' claims are similar").  And while Defendants claim that this administrative remedy would "cost the Putative Class Members nothing" (Def. Opp. 26), such an argument "overlooks the fact that [P]laintiffs are also bringing allegations under the FLSA," *Pichardo* v. *Carmine's Broadway Feast Inc.*, No. 15 Civ. 3312 (RA) (SN), 2016 WL 4379421, at *11 (S.D.N.Y. June 13, 2016), *report and recommendation adopted sub nom. Pichardo* v. *Carmine's Broadway Feast Inc.*, No. 15 Civ. 3312 (RA), 2016 WL 5338551 (S.D.N.Y. Sept. 23, 2016).  "Consolidating the federal and state claims into a single action conserves judicial resources and prevents the possibility of subsequent litigation of class members' state law claims." *Id.*

More fundamentally, as is common in wage and hour actions, "[i]t is unlikely that the class members would engage in individual actions because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation." *Zivkovic*, 329 F.R.D. at 76; *see also Gonzalez*, 2024 WL 1157074, at *7 ("[C]ourts in this Circuit have routinely held that class actions are [the] superior method for adjudicating NYLL claims because large numbers of employees are injured by common policies, but the damages

suffered are small relative to the burden of individual litigation, meaning class treatment may be the only mechanism for those employees to obtain relief."). Additionally, many of the potential class members may still be employed by Defendants and therefore may be unwilling to bring claims on an individual basis for fear of retaliation. *See Mangahas*, 2024 WL 2801922, at *13. While Defendants once again oppose superiority by pointing to ultimately inconsequential (for purposes of class certification) distinctions among potential class members (Def. Opp. 26), these arguments are unavailing. The Court has already found that common issues predominate, and that the Plaintiffs are adequate representatives of the entire class, because Defendants operate a single integrated enterprise. As such, the Court concludes that a class action is the superior method of resolving this action, and that the requirements of Rule 23(b)(3) have been satisfied.

### 3.    The Court Appoints Lead Plaintiffs and Class Counsel

The Court next addresses Plaintiffs' application for their attorneys to serve as class counsel. (*See* Pl. Br. 24). When determining whether class counsel should be appointed, a court must address the mandatory factors set forth in Federal Rule of Civil Procedure 23(g). *See Kimber* v. *Tallon*, 556 F. App'x 27, 28 (2d Cir. 2014) (summary order). These factors include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action; (iii) counsel's

knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(a).

For substantially the same reasons as those discussed with respect to Plaintiffs' showing of adequacy of representation under Rule 23(b)(3) (*see supra* B.1.d), the Court finds that Plaintiffs and their counsel are suitable to represent the proposed class and subclass.  Both Plaintiffs and their counsel have diligently pursued this litigation, and the Court is confident that they will continue to adequately represent the certified class and subclass.  Accordingly, the Court grants Plaintiffs' motion in this respect.

### 4.    The Proposed Notice Requires Modification

Finally, Plaintiffs seek approval of the form of proposed class notice.  (*See* Dkt. #36; Nussbaum Decl., Ex. 25).  Plaintiffs also seek "a list, in Excel format, containing all Class Members' names, dates of employment, last known addresses, and last known phone numbers."  (Dkt. #36).  Defendants do not specifically challenge these requests.

Rule 23(c)(2)(b) requires that, "[f]or any class to be certified under Rule 23(b)(3) … the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts.  Fed. R. Civ. P. 23(c)(2)(B).  Moreover:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*; *see also Orellana*, 2020 WL 5768433, at *8-9.

The Court generally finds that the proposed notice meets the required elements enumerated in Rule 23(c)(2)(B).  However, because this Opinion modifies the requested class definition to create a subclass, the proposed notice no longer includes an accurate "definition of the class certified."  Fed. R. Civ. P. 23(c)(2)(B)(ii).  Plaintiffs are therefore instructed to amend their proposed notice and redefine the class to include the following language:  "The class consists of all Servers who worked at either of the Restaurants at any time since September 1, 2017.  A subclass consists of all Servers who worked the Sushi Katsuei restaurant in Brooklyn at any time since September 1, 2017, and who participated in the tip-pool."  Subject to this modification, the Proposed Notice is approved.

Moreover, in order to facilitate the distribution of class notice, Defendants are required to produce the requested list of all class members' and subclass members' names, dates of employment, last known addresses, and last known phone numbers.  Defendants are instructed to provide this list to Plaintiffs on or before **March 15, 2025**.

## CONCLUSION

The motion for class certification of is hereby GRANTED, subject to the modification of the defined subclass.  Moreover, Plaintiffs are appointed as the Class and Subclass Representatives, and Joseph & Kirschenbaum LLP is

appointed as Class and Subclass Counsel.  The motion for an order directing
Defendants to produce a class list and for authorization of the proposed notice
to class members is also GRANTED, subject to the modifications outlined in
this Opinion.  The parties are instructed to file submit a joint letter on or before
**March 31, 2025,** proposing next steps in this case.

The Clerk of Court is directed to terminate the pending motion at docket
entry 36.

SO ORDERED.

Dated:     February 7, 2025
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge