UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUPAN CHAKMA, SULOY TRIPORA, TAPAN
KANTI TANCHANGYA, TIYANIT KAEWPAN,
and PRAMITA CHAKMA, on behalf of themselves
and others similarly situated

               Plaintiffs,

    v.

SUSHI KATSUEI, INC. d/b/a SUSHI KATSUEI
PARK SLOPE, ROYAL KATSUEI, INC. d/b/a
SUSHI KATSUEI WEST VILLAGE, AYE AYE
SWE, and AUNG KO WIN,

               Defendants.

---

23-cv-07804 (KPF)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR SANCTIONS PURSUANT
TO FED. R. CIV. P. 37, 28 U.S.C. § 1927, AND
THE COURT'S INHERENT POWERS**

D. Maimon Kirschenbaum
Denise A. Schulman
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and proposed Class*

## Table of Contents

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................... 3

  A.   Defendants' Failure to Timely Produce the Class List and Classwide Payroll Records
       Necessitated Multiple Motions to Compel Production ........................................ 3

  B.   Defendants' and/or Their Agents' Improper Communications with Class Members Leads
       to Voiding of Opt-outs and Mailing of Corrective Notice ................................... 8

  C.   Defendants Cited to Patently False Authority and Mis-cited Authority in Submissions to
       the Court ............................................................................................................. 13

III.  ARGUMENT ........................................................................................................ 14

  A.   Applicable Legal Standards ................................................................................ 14
     1.   Sanctions under Fed. R. Civ. P. Rule 37 ........................................................ 14
     2.   Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Powers ........... 16

       The Court Should Order Defendants and Defendants' Counsel to Pay Class Counsel's
       Attorneys' Fees and Costs .................................................................................. 17

  B. ........................................................................................................................... 17
     1.  The Court Should Order Defendants to Pay Class Counsel's Fees Incurred in Seeking
         Compliance with the Court's Multiple Discovery Orders ................................ 17
     2.  The Court Should Order Defendants to Pay Class Counsel's Fees Incurred in Seeking To
         and Successfully Voiding Opt-Outs .................................................................. 18
          The Court Should Order Defendants' Counsel to Pay Class Counsel's Fees in
          Connection with Their Fabricated Citations .................................................... 19
     3. ......................................................................................................................... 19
     4.  The Court Should Order Defendants to Pay $52,950 to Class Counsel as Reimbursement
         of Attorney's Fees and $781.88 as Reimbursement for Costs ........................ 20
     5.  The Court Should Impose a Monetary Penalty on Defendants' Counsel For Submitting
         False Citations ................................................................................................. 23

IV.   CONCLUSION ..................................................................................................... 23

## Cases

*Alexander v. DRG Hosp. Grp., Inc.*, No. 23-cv-11101 (ER), 2024 U.S. Dist. LEXIS 207389, at *6 (S.D.N.Y. Nov. 14, 2024) ................................................................................ 21

*Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 228 (S.D.N.Y. 2021) ......................................... 18

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3, 190 (2d Cir. 2007) ................................................................................................................ 20

*Best Payphones, Inc. v. Dobrin*, 409 F. Supp.3d 130, 236 (E.D.N.Y. 2018) .............................. 18

*Bilodeau v. Usinage Berthold, Inc.*, No. 24-2922, 2025 U.S. App. LEXIS 15893, at *9 (2d Cir. June 27, 2025) ...................................................................................................................... 14

*Boies, Schiller & Flexner LLP v. Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015) . 16

*Byoplanet Int'l, LLC v. Johansson*, No. 0:25-cv-60630, 2025 U.S. Dist. LEXIS 144449, at *29 (S.D. Fla. July 15, 2025) ...................................................................................................... 19

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ........ 16

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) ...................................................................................................................... 16

*City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2021 U.S. Dist. LEXIS 200751, at *14 (S.D.N.Y. Oct. 18, 2021) ................................................................................................ 15

DoubleLine Capital LP v. Odebrecht Fin., Ltd., No. 17-CV-4576 (GHW) (BCM), 2022 U.S. Dist. LEXIS 135733, at *42 (S.D.N.Y. July 19, 2022) .......................................................... 23

*Dougherty v. 2With Deli Corp.*, No. 23-cv-03496 (ER), 2023 U.S. Dist. LEXIS 215998, at *6 (S.D.N.Y. Dec. 5, 2023) ...................................................................................................... 21

*Gutman v. Klein*, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 95169, at *7-8 (E.D.N.Y. July 17, 2009) .................................................................................................................................. 22

*Heaston v. City of N.Y.*, 19-CV-5569 (PKC) (VMS), 2022 U.S. Dist. LEXIS 10776, at *25 (E.D.N.Y. Jan. 20, 2022) .................................................................................................... 17

*Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC) (RWL), 2023 U.S. Dist. LEXIS 130463, at *10 (S.D.N.Y. July 26, 2023) .............................................................................. 18

*Jay v. Spectrum Brands Holdings, Inc.*, No. 13 Civ. 8137 (LTS) (DF), 2015 U.S. Dist. LEXIS 144361, at *32 (S.D.N.Y. Oct. 20, 2015) .............................................................................. 15

*Link v. Wabash R. Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962).............. 16

*Local 3621, EMS Officers Union v. City of N.Y.*, No. 18-cv-4476 (LJL), 2022 U.S. Dist. LEXIS 50226 (S.D.N.Y. Mar. 21, 2022) ................................................................................... 20

*Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) ...................................................................................................................... 21

*Madison 92nd St. Assocs., LLC v. Marriott Int'l, Inc.*, No. 13 Civ. 291 (CM), 2013 U.S. Dist. LEXIS 160290, at *33 (S.D.N.Y. Oct. 31, 2013) ..................................................... 16

*Mantell v. Chassman*, 512 F. App'x 21, 24 (2d Cir. 2013) ........................................................ 15

*Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS 231925, at *9-11 (S.D.N.Y. Dec. 23, 2024).............................................................................................. 21

*Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) ............................................ 23

*Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986)......................................................... 17

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) ...................................... 22

*Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) ...................................................................................................... 16

*Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 300 (S.D.N.Y. 2008).................................... 19

*Seena International, Inc. v. One Step Up, Ltd.*, No. 15-CV-01095, 2016 U.S. Dist. LEXIS 64850, at *33 (S.D.N.Y. May 11, 2016)........................................................................ 15, 17

*Shnyra v. State Street Bank and Trust Co., Inc.*, No. 19-CV-2420, 2020 U.S. Dist. LEXIS 220507, at *30 (S.D.N.Y. Nov. 24, 2020) .............................................................. 15

*Tedesco v. Mishkin*, 629 F. Supp. 1474, 1486 (S.D.N.Y. 1986).................................................. 19

*Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) ............................... 21

**Statutes**

28 U.S.C. § 1927 ............................................................................................... *passim*
Fed. R. Civ. P. 16 .................................................................................................... 16
Fed. R. Civ. P. 37 ............................................................................................... *passim*

Plaintiffs Rupan Chakma, Suloy Tripora, Tapan Kanti Tanchangya, Tiyanit Kaewpan, and Pramita Chakma (collectively, "Plaintiffs") submit this memorandum in support of their motion for sanctions pursuant to Fed. R. Civ. P. 37, 28 U.S.C. § 1927, and the Court's inherent powers.[1]

## I.  PRELIMINARY STATEMENT

This motion arises out of (1) Defendants' repeated violations of the Court's discovery Orders, (2) Defendants' and/or their agents' improper communications with class members, and (3) Defendants' submission to the Court containing fabricated legal citations.  Since March 2025, Class Counsel, Joseph & Kirschenbaum LLP, has had to file at least eight different letter motions seeking to have Defendants comply with their basic discovery obligations and/or Court Orders relating to this matter.  As set forth below, Defendants frequently flouted Court orders and sought extensions to Court mandated deadlines after deadlines had already passed.  Defendants' violations were egregious and pervasive such that on at least three occasion the Court stated that it was "dismayed" with Defendants' conduct. Moreover, as set forth below, in Orders issued between May 2025 and August 2025, the court variously observed that:

- "Plaintiffs' counsel, as well as the Court, have already devoted far too many resources to ensuring Defendants' compliance with basic Court orders."
- The Courts' "patience ha[d] now worn thin and it finds it challenging to credit any of Defendants' representations."
- Defendants are ordered to show cause as "to why sanctions should not be imposed on Defendants and defense counsel, up to and including the entry of a default judgment, for their continued failure to comply with Court orders."
- It "shares Plaintiffs' outrage at Defendants' continued disregard for this Court's instructions"
- It was "not persuaded by Defendants attempts to justify their failure to produce the required materials[]" and that "Defendants have displayed a pattern of disregard for this Court's orders and their discovery obligations more broadly."
- "[F]or months upon months, there has been noncompliance with court orders requiring an enormous expenditure of resources by both plaintiffs' counsel and

---

[1] With this memorandum of law, Plaintiffs submit the November 13, 2025 declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits thereto ("Ex. __").

myself to get you to comply with things that you should have complied with in the first instance[.]"

In addition to flouting Court Orders, Defendants and/or their agents impermissibly communicated with class members in an attempt to coerce them to opt-out of the class action. This led to a suspiciously high number of class members opting out of the case. The Court Ordered Defendants to provide discovery relating to the allegation of improper communications and, after Defendants spent weeks ignoring Court Orders and hiding the ball as to what they knew about communications with class members, they caved at the last minute and agreed to void the questionable opt-outs. However, this concession only came after weeks of haggling during which the Court and Class Counsel spent significant resources and time seeking to get to the bottom of the suspiciously high opt-out rate.

Lastly and astonishingly, Defendants submitted phony citations to the Court in response to an order to show cause as to why sanctions, including terminating sanctions, should not be imposed on them.   Defendants' counsel admits that these citations are phony. Nonetheless, Defendants'/Defendants' counsel have hardly (if at all) apologized to the Court and counsel for these submissions. Perhaps even more astoundingly, Defendants have not withdrawn the submissions or provided any corrective notifications.

In May 2025, *i.e.*, before Defendants' infractions described above, the Court stressed  that "[i]f Defendants yet again fail to comply with the Court's deadlines, Plaintiffs are welcome to renew their application for sanctions."  Accordingly, for all the reasons set forth below, the Court should sanction Defendants and Defendants' counsel and Order them to pay Class Counsel's fees incurred over the last few months as a result of Defendants' improper litigation tactics.

## II.  RELEVANT FACTUAL BACKGROUND

### A.  Defendants' Failure to Timely Produce the Class List and Classwide Payroll Records Necessitated Multiple Motions to Compel Production

This is a wage and hour class action that was filed in September 2023. *See* Complaint at ECF No. 1.  On February 7, 2025, the Court certified this case as a class action and Ordered Defendants to produce to Plaintiffs the class list on or before March 15, 2025, *i.e.*, within five weeks of the class being certified. ECF No. 60 at 35.  Defendants did not produce the list on time and, on March 18, 2025, Plaintiffs wrote the Court seeking to secure the production of the class list. ECF No. 63. In light of defense counsel's representation that Defendants had been experiencing personal issues that required their attention, the Court granted Defendants an *ex post facto* extension of four weeks, until April 14, 2025, to produce the list. ECF No. 64.  In that Order the Court stated that "Defendants are cautioned, however, that no further extension requests will be granted." *Id*.  The Court also cautioned Defendants that it "expects Defendants to submit any future extension requests in this litigation before the relevant deadline has passed." *Id*.

On April 14, 2025, Defendants served what they purported to be the class list. However, a cursory review of the list revealed that Defendants did not include employee class members who worked at Sushi Katsuei Inc. after July 2023 and/or who worked at Royal Katsuei Inc. after September 2023 despite the fact that both restaurants are still currently operating. ECF No. 69. To be sure, in the Certification Order, the Court certified a class defined as "all tipped food-service employees other than sushi chefs who worked for Defendants at the Sushi Katsuei restaurants at any time on or after September 1, 2017." ECF No. 60 at 9.

The parties conferred about these deficiencies on April 21, 2025. At that meeting, Defendants' counsel stated the list was intentionally cutoff at July/September 2023 because the policy underlying one of the claims in the case—that Defendants failed to pay Plaintiffs on a

weekly basis, in violation of New York Labor Law Section 191(a)(1)(i)—ceased in 2023. Contrary to the Court's Certification Order, Defendants unilaterally decided that Plaintiffs were not entitled to a class of individual who worked after that time. In other words, Defendants openly ignored the Court's Order to produce a list of all tipped food-service employees who worked for Defendants at the Sushi Katsuei restaurants at any time on or after September 1, 2017 and flatly ignored the Court's two Orders to produce that list on time. ECF No. 60 at 9.

During the April 21, 2025 meet and confer, Plaintiffs reiterated their request that Defendants produced all class-wide payroll records. For example, despite the continuing nature of Plaintiffs' discovery demands, Defendants had not produced any records for class members who worked between May 2024 and April 2025. In response, Defendants' counsel again indicated that they would produce all records within two weeks, *i.e.*, by May 5, 2025, and that they would immediately inform the Court of same. Despite these assurances, Defendants never filed a letter with the Court stating that they would be producing this information and thus, on April 24, 2025, Plaintiffs wrote the Court seeking an Order that Defendants produce a complete class list as well as all outstanding discovery under penalty of sanctions. *See* ECF No. 69.

In response to Plaintiffs' letter motion, the Court stated that is it was "dismayed to hear that Defendants have failed to provide a complete class list, despite this Court's previous order" and again Ordered Defendants to produce a complete class list on or before May 9, 2025. ECF No. 71 at 3. The Court further admonished Defendants that "[i]f Defendants yet again fail to comply with the Court's deadlines, Plaintiffs are welcome to renew their application for sanctions." *Id*.

On May 9, 2025, Defendants produced a new version of the list. However, despite the Court's unambiguous Order as to what information Defendants needed to include in the list, Defendants still did not include phone numbers for any class members, even though Plaintiffs

confirmed that Defendants and their management employees communicated with food-service employees (*i.e.*, the class members) via telephone about scheduling and other matters involving the restaurants.[2]

On May 15, 2025, Plaintiffs again wrote the Court to secure compliance with its Orders that Defendants produce the class list. ECF No. 73. Plaintiffs also informed the Court that Defendants' self-imposed May 5, 2025 deadline by which they would produce all outstanding classwide discovery had passed and Defendants had not come into compliance. *Id*. On May 22, 2025, the Court wrote that it  was "dismayed that it must once again address issues related to the production of the class list" and that "Plaintiffs' counsel, as well as the Court, have already devoted far too many resources to ensuring Defendants' compliance with basic Court orders." ECF No.  74. The Court Ordered Defendants to produce the class list and all outstanding discovery by May 29, 2025. *Id*. The Court also Ordered Defendants produce, by May 29, 2025, a sworn certification from all Defendants confirming that they had produced all responsive classwide payroll documents in their possession, custody, and/or control. *Id*.

Defendants still did not produce all outstanding discovery on time and did not produce affidavits that complied with the Court's May 22, 2025 Order.  Instead, Defendants produced paychecks for some class members but did not produce any records of the amounts of tips left by customers at Sushi Katsuei during the class period. In addition, Defendants had still not produced any tip sheets for certain periods of time.  In terms of the affidavits, Defendants provided certifications that simply stated that they had produced the "paystubs of the relevant individuals," but did not state that they produced *all* payroll documents as envisioned by Plaintiffs' On May 15, 2025 application and the Court's May 22, 2025 Order. Accordingly, on June 12, 2025, Plaintiffs

---

[2] To be sure, at an August 15, 2025 conference with the Court, Defendants' counsel openly admitted that Defendants' management level employees spoke to other employees via telephone. *See, e.g.,* Ex. 1 at 21:3-7, 23:16 19.

wrote the Court seeking an Order that Defendants (1) produce all outstanding payroll/tip records (outlined above) within the following week, and (2) serve revise certifications indicating that they had produced all payroll/tip records and not merely paychecks. ECF No. 79.  On June 16, 2025, the Court Ordered Defendants to produce any additional documents, to the extent such documents exist, on or before June 23, 2025 and to provide compliant affidavits by that date. ECF No. 81.

Defendants did not produce all responsive information by the June 23 deadline and, on June 24, 2025, Plaintiffs again filed a letter motion to compel and for discovery sanctions. ECF No. 86.  On June 26, 2025, the Court once again stated that it was "dismayed by Defendants' continued failure to comply with discovery orders and Defendants' total disregard for the deadlines imposed by this Court." ECF No. 89. The Court noted that it had "generously granted multiple extensions of discovery deadlines in an effort to facilitate Defendants' compliance with its directives" but that its "patience ha[d] now worn thin and it [found] it challenging to credit any of Defendants' representations." *Id*. Accordingly, the Court Ordered Defendants to show cause in writing on or before July 10, 2025 "as to why sanctions should not be imposed on Defendants and defense counsel, up to and including the entry of a default judgment, for their continued failure to comply with Court orders." *Id*.

On July 11, 2025 (one day after the deadline), Defendants filed their response to the order to show cause. ECF No. 96. On July 15, 2025 (*i.e.*, five days after the deadline), Defendants also filed a declaration from Defendant A. Swe in support of their position. ECF No. 100.  In their submissions, Defendants essentially argue that the "severe sanction of default judgment, are not warranted in this case" but concede that "[i]f the Court deems sanctions appropriate, [it] impose less severe sanctions than default judgment." *Id*. Incredibly, despite having already missed multiple Court Ordered deadlines to produce documents, Defendants again requested that the

6

Court grant them an *ex post facto* extension and "[a]ccept Defendants all remaining production of documents [sic], *for the last chance*, within 30 day [sic]." *Id*. at 4 (emphasis in original). Defendants submitted this request despite purportedly certifying *in May 2025* that they had already produced all responsive information. *See supra* at 5. Moreover, this untimely extension request violated the Court's explicit instruction to Defendants that it "expects Defendants to submit any future extension requests in this litigation before the relevant deadline has passed." ECF No. 64.

In a particular display of chutzpah, the declaration from A. Swe simply describes her very busy schedule and her "inability" to comply with her own and Sushi Katsuei, Inc.'s discovery obligations. ECF No. 100.  In the declaration Ms. Swe did not bother to explain what discovery had been produced and remained outstanding. *Id*.  Moreover, Defendants did not bother to submit any statement at all that even remotely discussed Defendant Royal Katsuei Inc.'s and Defendant Aung Ko Win's discovery obligations and their lack of compliance with them.  In short, in their show cause letter, Defendants did not provide any valid explanation for their delay and the fact that they still had not produced all responsive information. Moreover, Defendants did not make any arguments against the Court awarding Class Counsel's attorney's fees incurred in having to had filed multiple applications seeking the production of all relevant and responsive information.

On July 18, 2025, the Court noted that it "shares Plaintiffs' outrage at Defendants' continued disregard for this Court's instructions" and that Defendants complete production "is long overdue[.]" ECF No. 102. The Court also emphasized that it was "not at all persuaded by Defendants' attempts to justify their delay." *Id*. The Court Ordered that Defendants' failure to comply with discovery orders and related sanctions would be best addressed at an already scheduled hearing in the case for mid-September 2025. *See infra* at 9.

On September 12, 2025, the parties informed the Court that Defendants had finally provided Plaintiffs with affidavits stating that no additional documents responsive to any of Plaintiffs' requests exist, and that, in light of these representations, Plaintiffs did not intend to seek additional documents. ECF No. 113 at 2.

### B. Defendants' and/or Their Agents' Improper Communications with Class Members Leads to Voiding of Opt-outs and Mailing of Corrective Notice

In or around May 30, 2025, Class Counsel mailed notices of the class action to approximately 75 class members. ECF No. 88. In June 2025, Class Counsel was contacted by two class members, who are former employees of Sushi Katsuei, who stated that a manager at Defendants' restaurant named Maya Swe ("M. Swe") had been pressuring them to opt-out of the case. *Id.* By late June 2025, Class Counsel had received 31 requests to be excluded from the class (*i.e.*, requests from more than 40% of the class members) which, in Class Counsel's experience, was an extremely high opt out rate. *Id.* Accordingly, on June 26, 2025, Plaintiffs wrote the Court to (1) notify the Court that Defendants had engaged in highly inappropriate interference with the Court's supervision of the class-notice process, and (2) to request an evidentiary hearing in advance of Plaintiffs' anticipated motion to void the highly suspicious exclusion requests. *Id.*

On July 1, 2025 Defendants responded to Plaintiffs; letter. ECF No. 91. In that letter, Defendants attached a sworn declaration from M. Swe in which she denied Plaintiffs' allegations and also denied that Defendants Aung Ko Win and Aye Aye Swe had any involvement in or knowledge of M. Swe's communications with class members. *Id.* On July 2, 2025, the Court Ordered "M. Swe to immediately cease from engaging in conduct that could be perceived by this Court to obstruct or contravene Court orders" and made clear that "that any further impermissible communications with class members (including both current and former employees of Sushi Katsuei) will almost certainly lead to sanctions." ECF. No. 92. The Court also noted that it was

"skeptical of Defendants' recitation of events" as it was "struck by the extraordinarily high number of opt-outs in this case[]" and that "certain statements in M. Swe's declaration defy logic." *Id*. The Court otherwise reserved judgment on the issue until after a settlement conference in the matter that was scheduled to take place on July 17, 2025. *Id*.

The day after that Order was issued, Class Counsel wrote the Court that they had been informed that another one of Defendants' employees, K. Tun, was pressuring class members to opt-out at the behest of M. Swe. ECF No. 93. Accordingly, Plaintiffs requested that the Court hold an evidentiary hearing to determine if the exclusion requests should be voided and a corrective notice be disseminated to the class. *Id*. Plaintiffs also requested that the Court permit them to take certain discovery from Defendants and their agents in advance of any such hearing. *Id*.

On July, 9, 2025, the Court granted this request and scheduled an evidentiary hearing for September 16, 2025. ECF No. 95. The Court also Ordered Defendant A. Swe, Defendant A. Win, and their employees M. Swe, and K. Tun to appear at that hearing. *Id*. Further, the Court Ordered these individuals to, among other things:

1. Provide by July 18, 2025  Class Counsel with (1) affidavits identifying every class members with whom they had discussed this lawsuit since it was certified, and (2) all class members' phone numbers in their possession
2. Produce by July 25, 2025 all written communications they had with class members since February 7, 2025.

*Id*.at 3-4. Finally, the Court also Ordered M. Swe to turn over to Class Counsel her call logs from May 1, 2025, to the present, on or before July 18, 2025. *Id*.

Defendants blatantly ignored the July 9, 2025 Order and did not produce an affidavit from Defendants A. Swe or A. Win by July 18, 2025. ECF No. 103.  Defendants also failed to produce, by that same date, Class Member's phone numbers in their possession as well as M. Swe's call logs. *Id*.  While Defendants did produce a declaration from M. Swe, the contents of that statement

were an obvious attempt at gamesmanship to avoid compliance with the Court's Order. Specifically, M. Swe disavowed knowledge of who the class members are despite having worked at Sushi Katsuei during the entirety of the class period. *See* ECF No. 103-1 at ¶ 4. ("without knowing exactly who is a class member and who is not, one or more individuals have asked me about the lawsuit at work, but I do not recall with specificity who those individuals are."). M. Swe was obviously lying on Defendants' behalf, as Defendants had previously filed a sworn declaration from her in which she explicitly referred to "class members," *i.e.*, she knew precisely who the class members are in the case. *See* ECF No. 91-1 (M. Swe declaration) at ¶ 7 ("Aye Aye Swe and Aung Ko Win did not communicate with any **class member** […]"),  ¶ 32 ("Going forward, I will be more careful of my communications with **class members**."), ¶ 34 (At no time and under no circumstance did Aye Aye Swe or Aung Ko Win participate in any communications with **class members** […].") (emphases added).

Given Defendants' egregious noncompliance in the face of the very serious allegations of coercing opt-outs, on July 21, 2025, Plaintiffs wrote the court that Defendants were hampering Class Counsel's ability to prepare for the September 16, 2025 hearing. ECF No.103.  In response, Defendants essentially informed the Court that they were too busy to meet the Court Ordered deadlines. ECF No. 104. On July 28, 2205, the Court issued an Order remarking that it was "not persuaded by Defendants' attempts to justify their failure to produce the required materials[]" and that "Defendants have displayed a pattern of disregard for this Court's orders and their discovery obligations more broadly." ECF No. 105 (The Court also noted that it "understands that Defendants have competing work and family obligations. Nevertheless, as this Court has explained on a number of occasions, the proper recourse if Defendants are unable to comply with the Court's deadlines is to seek an extension. It is not for Defendants to disregard the Court's explicit

instructions and comply as they see fit."). The Court Ordered Defendants to produce any still-outstanding material that was outlined in the Court's July 9, 2025 order by August 1, 2025. *Id*.

Not surprisingly, Defendants again failed to meet the August 1, 2025 deadline, and Plaintiffs wrote to request that the Court hold a conference. ECF No. 106. Incredibly, in response, Defendants tried to hide M. Swe's noncompliance with the Court's Orders by stating that she is an "independent, non-party adult outside their control." ECF No. 110 at 2. Defendants also brazenly characterized Plaintiffs' request for M. Swe's call logs as being "overbroad and improper, even absent a subpoena[,] despite the fact that she and her employers were under a *Court Order* to produce that information. *Id*.

On August 15, 2025, the Court held a teleconference on Defendants' noncompliance. *See* Ex. 1 (transcript of 8/15/25 conference). Among other things, the Court rejected Defendants' argument that they did not control M. Swe: "as current employees of the corporate defendants, [Defendants' counsel] does have an obligation to review with them who the class members are, or at least potential class members are, so that they can ascertain whether or not they have had conversations with any of them." *Id*. at 9:14-19. The Court further found that Defendants' claim that the data the Court Ordered Ms. Swe to produce was not in Defendants' possession "is actually not an acceptable answer because [Defendants] either enacted or allowed to exist a policy by which Ms. Swe was a point person for communications with employees. That being the case, her communications have to be discoverable." *Id*. at 17:4-9.

The Court also rejected Defendants' attempts to walk back statements in affidavits they submitted to the Court. Specifically, speaking to Defendants' counsel, the Court stated:

> You are trying your best to walk away from these materials, […] However, you are using those statements, those sworn statements, as a basis for your arguments to me that no further discovery is needed. That is not helpful. You can't say

simultaneously maybe she doesn't know what she is talking about but, by the way, Failla, accept that she knows what she is talking about. You can't do both.

*Id*. at 28:7-18.  After these admonishments, Defendants' counsel admitted in open court that she knew the affidavit M. Swe produced – in which she disavowed knowledge of who the class members are – was false. *Id*. at 47:9-17 ("MR. NUSSBAUM: I just want to be clear, though. So the record we have right now is that Ms. Seo informed her who the people are, but then […] Ms. Seo turned over an affidavit to us that says that the person that she discussed this with that's he knowingly lied in. I just want to have that clear on the record. THE COURT: Well, that is what's on the record.")

During the conference, the Court also underscored the amount of time the Court and Class Counsel had spent trying to secure Defendants compliance with discovery in the case. *Id*. at 34:19-35:1 ("for months upon months, there has been noncompliance with court orders requiring an enormous expenditure of resources by both plaintiffs' counsel and myself to get you to comply with things that you should have complied with in the first instance."). At the conclusion of the conference, the Court Ordered Defendants to produce any additional or supplemental discovery within one week. ECF Entry for 08/15/2025.

Mere days before the evidentiary hearing on the suspicious opt-outs, the parties informed the Court that, subject to Court approval, Defendants agreed to (1) invalidate all exclusion requests received by putative class members by that date, and (2) to allow Plaintiffs to send out corrective notice to class members that previously opted out.  ECF No. 113. In other words, after weeks of chasing Defendants for discovery necessary to prove that the exclusion requests were improperly procured, multiple letters to the Court, and a roughly hour-long Court conference relating to Defendants' failure to produce discovery, Defendants conceded to all the relief Plaintiffs sought.

C.  **Defendants Cited to Patently False Authority and Mis-cited Authority in Submissions to the Court**

In addition to filing an affidavit that knowingly included false statements of fact, in their July 10, 2025 "show cause" letter Defendants also cited to and quoted authority that does not exist and appears to be an AI hallucination. Plaintiffs' July 15, 2025 letter identified at least three different occasions that Defendants attributed completely fabricated holdings to cases. For example, Defendants cited *Oconner v. Agilant Sols*., Inc., 444 F. Supp. 3d 593 and *Haider v. Lyft, Inc*., 2021 U.S. Dist. LEXIS 147975 for the proposition that communications of third-parties cannot be attributed to their employers absent evidence of an agency relationship. ECF No. 101 at 3-4. However, neither *Oconner* nor *Haider* even remotely discuss agency law or third party communications. *Id*.  In other words, in response to serious allegations of egregious misconduct and an Order to show cause as to why Defendants should not be sanctioned, Defendants' counsel seemingly plugged something into an AI legal letter generator and did not even bother to check that the authority cited actually stood for what Defendants were using it for.  Despite these very serious allegations, Defendants never bothered to respond to the charges. Even more egregiously, they have still not withdrawn or corrected their July 10 letter.

On September 16, 2025, the Court held a hearing to discuss, among other things, these false citations. *See* Ex. 2 (transcript of 9/16/25 hearing).  At the hearing Defendants' counsel, Diana Seo, admitted that she used AI to generate the July 10 letter and never reviewed the citations in it before filing it. *Id*. at 23, 25.  The Court also noted that "all of the cases that [Defendants' counsel] cited seem to be irrelevant to the points that [they were] raising." *Id*. at 31:6-9.

Ms. Seo also admitted that she never tried to withdraw the letter or file a new submission with accurate citations. *Id*. at 37:14-20 ("THE COURT: […] So, until today, I had reason to be concerned about your submissions but you never tried to fix them, which is troubling. Right now,

today, they're still on the docket. They're still on the docket, and they're wrong, and they are the product of AI. And yet, even in July as the defendants are telling me this, you don't even try and explain it. You've allowed it to go until today, a good two months later. MS. SEO: Yeah. I could have addressed this early on, and that's also my fault that I was not -- I calendared the things that I have to do, but because of the circumstances, I -- if you let me make an excuse, because of the circumstances, I was not just in the right mind.").

The Court further admonished Ms. Seo for "let[ting] it get to the point where we had to have an actual in-court hearing on it when you could have immediately written [the Court] on the 16th of July and said they're right, I made a terrible mistake, I will submit a corrected letter in a day, and stopped all of this from happening." *Id*. at 38:2-7. In response, Ms. Seo stated that "if you give me another chance to fix everything altogether and submit it to the Court, then I am willing to do it." *Id*. at 39:6-8.  Astonishingly, despite this representation to the Court, Ms. Seo has still not withdrawn the July 10 letter.

### III.  ARGUMENT

#### A.  **Applicable Legal Standards**

##### 1.    **Sanctions under Fed. R. Civ. P. Rule 37**

"A district court has wide discretion to impose sanctions for abusing the discovery process." *Bilodeau v. Usinage Berthold, Inc.*, No. 24-2922, 2025 U.S. App. LEXIS 15893, at *9 (2d Cir. June 27, 2025) (summary order) (internal quotation marks omitted). Rule 37(a)(5)(A) provides that, if a district court grants a Rule 37(a) motion to compel discovery, the "court *must*, after giving an opportunity to be heard, require the ... [opposing] ... party or attorney advising that conduct to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

A sanction under Rule 37(a)(5) does not require violation of a court order; "[r]ather, a court must order a sanction under Rule 37(a)(5) if it is forced to grant a motion to compel discovery or the requested discovery is provided after such a motion was filed." *Mantell v. Chassman*, 512 F. App'x 21, 24 (2d Cir. 2013); *see also City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345, 2021 U.S. Dist. LEXIS 200751, at *14 (S.D.N.Y. Oct. 18, 2021) (stating that whether a party violated a court order is "irrelevant" to imposition of sanctions pursuant to Fed. R. Civ. P. 37(a)(5)(A)). As courts have recognized, "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Seena International, Inc. v. One Step Up, Ltd.*, No. 15-CV-01095, 2016 U.S. Dist. LEXIS 64850, at *33 (S.D.N.Y. May 11, 2016); *accord Shnyra v. State Street Bank and Trust Co., Inc.*, No. 19-CV-2420, 2020 U.S. Dist. LEXIS 220507, at *30 (S.D.N.Y. Nov. 24, 2020) (quoting *Seena*, 2016 U.S. Dist. LEXIS 64850, at *33).

In turn, Fed. R. Civ. P. 37(b)(2)(C) provides that where a party is sanctioned for failing to comply with a court's discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Accordingly, a plaintiff is entitled to recover reasonable attorneys' fees and costs incurred as a result of a defendant's violations of a court's discovery orders. When awarding attorneys' fees pursuant to Fed. R. Civ. P. 37, the presumptively reasonable fee is the reasonable hourly rate multiplied by the number of hours reasonably worked. In fact, "[o]nce it is shown that a discovery order was violated, the disobedient party has the burden of showing that an award of the expenses caused by the violation is not warranted." *Jay v. Spectrum Brands Holdings, Inc.*, No. 13 Civ. 8137 (LTS) (DF), 2015 U.S. Dist. LEXIS 144361, at *32 (S.D.N.Y. Oct. 20, 2015);

*see also* Fed. R. Civ. P. 16(f)(2) (providing that "the court must order" the noncompliant party to pay the opposing party's reasonable expenses); *see also Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 157 (S.D.N.Y. 2012) (noting that the Second Circuit has characterized the imposition of reasonable expenses, including attorney's fees, on the disobedient party as "'the mildest' of the sanctions authorized by Rule 37") (quoting *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979))

## 2. Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Powers

Under 28 U.S.C. § 1927, a court is authorized to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927; *see also Madison 92nd St. Assocs., LLC v. Marriott Int'l, Inc.*, No. 13 Civ. 291 (CM), 2013 U.S. Dist. LEXIS 160290, at *33 (S.D.N.Y. Oct. 31, 2013) ("The purpose of § 1927 is to ensure that those who create unnecessary costs also bear them." (citation and quotation marks omitted)), *aff'd sub nom. Boies, Schiller & Flexner LLP v. Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015) (summary order).

Further, the Court possesses the inherent power to sanction a party "for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)). Notably, a court possesses "'wide discretion' to craft an appropriate sanction, and may consider the effects on the parties and the full knowledge of the relevant facts" gained throughout sanctions hearings. *Heaston v. City of N.Y.*, 19-CV-5569 (PKC) (VMS), 2022

U.S. Dist. LEXIS 10776, at *25 (E.D.N.Y. Jan. 20, 2022) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986)).

**B.** The Court Should Order Defendants and Defendants' Counsel to Pay Class Counsel's Attorneys' Fees and Costs

**1.** **The Court Should Order Defendants to Pay Class Counsel's Fees Incurred in Seeking Compliance with the Court's Multiple Discovery Orders**

As set forth in detail above, Defendants ignored multiple discovery Orders (1) relating to the underlying claims in the case, and (2) relating to allegations that Defendants and/or their agents interfered in the class notice process. On the record before the Court, there is no question that Defendants repeatedly and consciously failed to comply with the Court's discovery Orders. Moreover, Defendants submitted false sworn statements that they had produced all responsive discovery only to later produce more information. Given that Plaintiffs were required to file multiple letter motions to secure compliance with discovery and to secure compliance with the Court's multiple Orders relating to discovery, Defendants must reimburse them for the attorneys' Class Counsel incurred.

Again, "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *Seena Int'l, Inc.*, 2016 U.S. Dist. LEXIS 64850, at *33. As outlined above, under Rule 37(a), whenever a party makes a successful motion to compel disclosure, the court "must," after giving an opportunity to be heard, award "the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the movant failed to make good-faith efforts to resolve the matter without court intervention, the nondisclosure was substantially justified, or "other circumstances make such an award unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). Here, Plaintiffs filed at least eight letters seeking compliance from Defendants in order to obtain discovery and thus Plaintiffs are entitled to have their fees reimbursed. *See, e.g., Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC)

17

(RWL), 2023 U.S. Dist. LEXIS 130463, at *10 (S.D.N.Y. July 26, 2023) ("payment of reasonable expenses, including attorney's fees, 'must' be imposed" where "lapses were not substantially justified, and there are no other circumstances that would make an award of expenses unjust").

In addition to sanctions under Rule 37(a), the Court should sanction Defendants under Rule 37(b).  Defendants violated multiple clear directives from the Court relating both to discovery of the underlying claims in the case as well as to discovery relating to the suspicious exclusion requests. Here too the court "must" order the disobedient party, its attorney, or both, to pay the other parties' expenses, including a reasonable attorney's fee, caused by the failure, "unless the failure was substantially justified or some other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Indeed, "the mildest sanction under Rule 37(b) is an order to reimburse the opposing party for expenses caused by the failure to cooperate." *Best Payphones, Inc. v. Dobrin*, 409 F. Supp.3d 130, 236 (E.D.N.Y. 2018) (internal quotation marks omitted); *see also, e.g., Ali v. Dainese USA, Inc*., 577 F. Supp. 3d 205, 228 (S.D.N.Y. 2021) (awarding, among other sanctions, attorneys' fees and costs  that counsel incurred in making motions for discovery and for sanctions) (Failla J.).

### 2.    The Court Should Order Defendants to Pay Class Counsel's Fees Incurred in Seeking To and Successfully Voiding Opt-Outs

The Court should also require Defendants to pay Plaintiffs' attorneys' fees incurred in ensuring that Defendants did not interfere with the class action notice process.  In short, as outlined above, Defendants and/or their agents clearly engaged in improper communication with class members. Defendants then sent Plaintiffs and their counsel on wild goose chase to try and prove these allegations only to concede at the eleventh hour to the relief Plaintiffs sought. Under these circumstances, where a defendant has interfered with the class notice process and counsel was required to incur fees in securing the integrity of that process, "Plaintiffs' counsel are also entitled

18

to costs, including attorneys' fees reasonably incurred in uncovering, proving, and applying for relief from [defendant's] misconduct." *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1486 (S.D.N.Y. 1986) (finding where, as here, a defendant interfered with the notice process, that the "expenditure of time and services was necessitated by [defendant's] wrongful conduct and was substantially increased by the extensive hearings and testimony required to bring these matters to conclusion. The need for much of the testimony could have been eliminated if [defendant] and his counsel in good faith had stipulated to known facts."); *see also Romano v. SLS Residential, Inc*., 253 F.R.D. 292, 300 (S.D.N.Y. 2008) (after voiding opt-outs and ordering the issuance of corrective notice where defendant improperly interfered in notice process, further ordering defendants "to pay the costs and fees that plaintiffs' counsel has incurred in addressing the Defendants' abusive conduct.").

**3.**    The Court Should Order Defendants' Counsel to Pay Class Counsel's Fees in Connection with Their Fabricated Citations

As outlined above, Defendants' counsel admitted to submitting false authority and to misapplying caselaw. Moreover, Defendants' counsel has hardly expressed any remorse and, despite their representation to the Court that they would remedy the false submissions, they have done nothing in that regard.  Under these circumstances, where Defendants' counsel caused Class Counsel to have to respond to their letter with bogus citation, the Court should Order Ms. Seo to pay all the fees lass Counsel incurred in responding to the letter. Se*e, e.g., Byoplanet Int'l, LLC v. Johansson*, No. 0:25-cv-60630, 2025 U.S. Dist. LEXIS 144449, at *29 (S.D. Fla. July 15, 2025) ("Pursuant to Rule 11, this Court's inherent authority, […], and 28 U.S.C. § 1927, [the attorney] is ORDERED to pay the attorneys' fees for cases for all time spent responding to any filing in which generative AI was used to develop hallucinated cases and fabricated quotations.").

4. **The Court Should Order Defendants to Pay $52,950 to Class Counsel as Reimbursement of Attorney's Fees and $781.88 as Reimbursement for Costs**

a. **The reasonable hourly rate**

"The reasonable hourly rate is the prevailing market rate, *i.e.*, the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Local 3621, EMS Officers Union v. City of N.Y., No. 18-cv-4476 (LJL), 2022 U.S. Dist. LEXIS 50226, at *12 (S.D.N.Y. Mar. 21, 2022) (internal quotation marks omitted). In determining the reasonable rate, courts consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3, 190 (2d Cir. 2007).

Here, Plaintiffs seek fees for work performed by three attorneys: Maimon Kirschenbaum, Josef Nussbaum and Denise Schulman. Mr. Kirschenbaum is the managing partner of Joseph & Kirschenbaum LLP ("JK"), a plaintiffs'-side employment law firm. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments, he became member/partner of the firm in May of 2007. Ms. Schulman received her J.D. from NYU School of Law, cum laude, in 2008 and JK in January 2009. She was an associate at JK until February 2017, when she became a partner. The undersigned graduated from McGill University's Faculty of Law in 2009 and joined JK in 2011 and later became a partner

in 2020. The majority of Mr. Kirschenbaum's, Ms. Schulman's and the undersigned's docket consists almost entirely of representing employees in their claims against employers. Together, we have litigated dozens of wage and hour cases against restaurants and other hospitality employers. Many of these cases have been certified as collective and/or class actions. (Nussbaum Decl. ¶¶ 10-11.) Courts have repeatedly recognized JK's attorneys' skill and expertise in wage and hour litigation. *E.g.*, *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV 5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as Ex. 5).

Mr. Kirschenbaum, Ms. Schulman and the undersigned have all been approved by courts at an hourly rate of $500 per hour. *See Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) at 16:16-19, 17:21-22 (transcript attached as Ex. 6) (approving Mr. Kirschenbaum, Ms. Schulman and Mr. Nussbaum at $500 ); *see also Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518, 2024 U.S. Dist. LEXIS 231925, at *9-11 (S.D.N.Y. Dec. 23, 2024) (awarding fees at $500 per hours for Kirschenbaum and Schulman); *Alexander v. DRG Hosp. Grp., Inc.*, No. 23-cv-11101 (ER), 2024 U.S. Dist. LEXIS 207389, at *6 (S.D.N.Y. Nov. 14, 2024) ("As to Schulman and Kirschenbaum, the Court finds that the hourly rate of $500 is reasonable [… and their] hourly rate is commensurate with other similarly-experienced partners in the field."); *Dougherty v. 2With Deli Corp.*, No. 23-cv-03496 (ER), 2023 U.S. Dist. LEXIS 215998, at *6 (S.D.N.Y. Dec. 5, 2023) (finding hourly rate of $500 per hour for Kirschenbaum and Schulman "reasonable").

### b. Hours reasonably worked

A true and correct copy of Class Counsel's relevant contemporaneous time records is attached hereto as Exhibit 3. The time records reflect time spent, among other things, (1) drafting at least eight letter motions relating to Defendants' noncompliance with discovery and reviewing Court Orders relating to Defendants' noncompliance; (2) communicating with Defendants'

counsel about continued discovery deficiencies; (3) meeting with class members who were pressured by Defendants' agents to opt out and helping them draft declarations; (4) drafting letters to the Court about Defendants and/or their agents improper communication with class members; (5) preparing for and attending a conference and relating to Defendants' noncompliance with discovery orders in advance of the anticipated evidentiary hearing, (6) preparing for and attending an evidentiary hearing; (7) preparing an submitting a corrective notice to class members; and (8) drafting this sanctions motion. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) (holding that time spent working on a fee application is compensable); *Gutman v. Klein*, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 95169, at *7-8 (E.D.N.Y. July 17, 2009). Defendants' failure to comply with the Court's multiple discovery Orders caused Plaintiffs' counsel to expend most of this time. Moreover, Defendants' insistence that they had not had any improper communications with class members and thus that there was no legitimate reason to void opt out statement, only to then agree to void those statements at the last minute, forced Class Counsel to expend even more unnecessary time and resources. As set forth above, all of this time is compensable. In total, Plaintiff seeks fees for 28.2 hours worked by Mr. Kirschenbaum, 62.1 hours worked by the undersigned, and 19.4 hours worked by Ms. Schulman.[3] Applying rates of $500 for all these three partners at JK, Plaintiffs seeks total fees of $54,850. Of these fees, Plaintiffs respectfully request that the Court Order Defendants' counsel, Ms. Seo, to pay for $1,900 in fees Class Counsel incurred in researching and responding to her letter with fake citations[4] and that Defendants be required to pay the remaining $52,950.

---

[3] If Plaintiff files a reply brief on this motion and/or if there is oral argument on this motion, Plaintiff will seek additional attorneys' fees for that time.

[4] The time spent researching and preparing this letter includes 1.8 hours billed by Mr. Kirschenbaum on July 15, 2025, .9 hours billed by Mr. Nussbaum on July 14 and 15, 2025, and 1.1 hours billed by Ms. Schulman on July 14 and 15, 2025. *See*, Ex. 3. This total of 3.8 hours billed at $500 equals a total of $1,900.

### c.  Plaintiffs' Out-of-Pocket Expenses

Lastly, Defendants should also have to pay for the costs Class Counsel incurred in purchasing copies of the transcripts of the Augst 2025 and September 2025 Court conferences relating to Defendants' antics. A true and correct copy of Class Counsel's costs is attached hereto as Exhibit 4 totaling $781.88.  *See, e.g.*, *DoubleLine Capital LP v. Odebrecht Fin., Ltd*., No. 17-CV-4576 (GHW) (BCM), 2022 U.S. Dist. LEXIS 135733, at *42 (S.D.N.Y. July 19, 2022) (pursuant to Fed. R. Civ. P. 37, ordering a party to pay for "out-of-pocket costs, caused by their failure to obey" court's discovery order).

### 5.  The Court Should Impose a Monetary Penalty on Defendants' Counsel For Submitting False Citations

"Across the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases." *Benjamin*, 779 F. Supp. 3d 341 at 347 (finding that in "nearly all [such] cases, courts have imposed monetary sanctions ranging from $1,500 to $15,000.").  Here, as outlined above, Defendants' counsel admitted to submitting false authority and to misapplying caselaw. Moreover, Defendants' counsel has hardly expressed any remorse and, despite their representation to the Court that they would remedy the false submissions, they have done nothing in that regard. Accordingly, Plaintiffs respectfully request that the Court fashion an appropriate penalty to deter such conduct in the future. *See, e.g., Mata v. Avianca, Inc*., 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) (concluding that a penalty of $5,000 "sufficient but not more than necessary to advance the goals of specific and general deterrence" where an attorney expressed remorse for filings false citations but never withdrew the submission).

## IV.  CONCLUSION

For the foregoing reasons, Defendants should be sanctioned pursuant to Rule 37, 28 U.S.C. § 1927and the Court's inherent powers.

Dated: November 13, 2025                                    _/s/ *Josef Nussbaum*

D. Maimon Kirschenbaum
Denise A. Schulman
Josef Nussbaum
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff, Opt-In Plaintiff,*
*and proposed Class*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 7,752 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: November 13, 2025                                By:      s/ *Josef Nussbaum*
                                                                Josef Nussbaum