UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RUPAN CHAKMA, SULOY TRIPORA, TAPAN
KANTI TANCHANGYA, TIYANIT KAEWPAN,
and PRAMITA CHAKMA, on behalf of themselves
and others similarly situated

                    Plaintiffs,

     v.

SUSHI KATSUEI, INC. d/b/a SUSHI KATSUEI
PARK SLOPE, ROYAL KATSUEI, INC. d/b/a
SUSHI KATSUEI WEST VILLAGE, AYE AYE
SWE, and AUNG KO WIN,

                   Defendants.

23-cv-07804 (KPF)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

---

### JOSEPH & KIRSCHENBAUM LLP

D. Maimon Kirschenbaum
Josef Nussbaum
Denise A. Schulman
45 Broadway, Suite 320
New York, NY 10006
Tel: (212) 688-5640

*Attorneys for Plaintiffs and Fed. R. Civ. P. 23 Class*

**Table of Contents**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    RELEVANT PROCEDURAL HISTORY AND STATEMENT OF FACTS ....................... 2

III.   SUMMARY JUDGMENT STANDARD ............................................................ 5

IV.    ARGUMENT ...................................................................................................... 7

    A.   Defendants Violated New York's Minimum Wage Law by Paying Class Members Pursuant to a Tip Credit without Providing the Required Notice **........................................ 7**

    B.   Defendants Misappropriated Subclass Members' Tips At SK-PS **.................................. 10**
      i.   Defendants illegally distributed SK-PS tips to a manager ........................................... 10
      ii.  Defendants illegally retained a portion of tips at SK-PS ............................................ 12

    C.   Defendants Unlawfully Paid Class Members on a Biweekly Basis Until the End of 2022 **...................................................................................................................................... 14**

    D.   Defendants Are Liable for Liquidated Damages Under the NYLL **.................................. 15**

    E.   Defendants Violated N.Y. Lab. Law § 195(3) by Failing to Provide Class Members with Compliant Wage Statements **............................................................................. 17**

    F.   The Class Members are Entitled to Summary Judgment as to Damages on Their Tip Credit Claims **............................................................................................................ 21**

    G.   Defendants are Liable for Prejudgment Interest Under the NYLL **.................................. 22**

    H.   Defendants Win and A. Swe Are Individually Liable as Employers for FLSA And NYLL Claims **................................................................................................................ 23**

V.     CONCLUSION ............................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Adams's Case*, 3 Ct. Cl. 312 (Ct. Cl. 1867) ........................................................................ 11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 4, 5

*Argudo v. Parea Grp. LLC*, No. 18-CV-0678,
    2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sept. 24, 2019)......................................... 21

*Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207 (S.D.N.Y. 2023) ...................... 5, 6, 14

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (2013)........................................................ 9, 10

*Barney v. Saunders*, 57 U.S. 535 (1854)................................................................................. 12

*Beh v. Community Care Companions*, No. 19-cv-1417,
    2021 U.S. Dist. LEXIS 197316 (W.D.N.Y. Feb. 1, 2021) .......................................... 14

*Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276 (2d Cir. 2023)...................................... 12, 13

*Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013).............. 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 4

*Chang v. Loui Amsterdam, Inc.*, No. 19-CV-3056,
    2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022) ......................... 7, 8, 9, 21

*Charles v. Pinnacle Too, LLC*, No. 22 CV 4232,
    2024 U.S. Dist. LEXIS 188084 (S.D.N.Y. Oct. 15, 2024).................................... 11, 12

*Chichinadze v. BG Bar, Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021) ........................... 7, 10, 15

*Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220 (S.D.N.Y. 2002)......................... 9, 10

*Conway v. Ichan & Co.*, 16 F.2d 504 (2d Cir. 1994)............................................................. 16

*Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-cv-5262,
    2025 U.S. Dist. LEXIS 82056 (S.D.N.Y. Apr. 30, 2025) .......................................... 18

*Cousin v. White Castle System, Inc.*, No. 06-CV-6335,
    2009 U.S. Dist. LEXIS 57079 (E.D.N.Y. July 6, 2009)............................................. 5

*Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (PAC),
    (S.D.N.Y. Nov. 16, 2014)........................................................................................... 11

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011)................................................ 5

*Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339 (E.D.N.Y. 2015) ...................................... 26

*Flanigan v. Vulcan Power Group, LLC*, 642 Fed. App'x 46 (2d Cir. 2016)........................... 18

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423 (2d Cir. 2001) .............................................. 5

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017) ................................................... 16

*Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 24, 2019) ...................................................... 15

*Grande v. 48 Rockefeller Corp.*, No. 21-cv-1593,
    2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. Aug. 11, 2023) ...................................................... 25

*Grenawalt v. AT&T Mobility LLC*, 642 F. App'x 36 (2d Cir. 2016) ...................................................... 21

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024) ............................................................... 13

*Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) ................................................... 5

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ........................................... 15, 17, 20, 24

*Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176,
    2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016) ............................................................. 7

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) .................................................................................. 4

*Hwangbo v. Kimganae, Inc.*, No. 19-cv-6356,
    2023 U.S. Dist. LEXIS 55614 (E.D.N.Y. March 30, 2023) ....................................................... 8

*Imbarrato v. Banta Mgmt. Servs.*, No. 18 CV 5422,
    2020 U.S. Dist. LEXIS 49740 (S.D.N.Y. Mar. 20, 2020) ........................................................ 12

*In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910,
    2004 WL 725969 (S.D.N.Y. Apr. 2, 2004) ................................................................................ 4

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .......................................................................... passim

*Keawsri v. Ramen-Ya Inc.*, No. 17 Civ. 2406,
    2018 WL 279756 (S.D.N.Y. Jan. 2, 2018) ................................................................................ 4

*Kelly v. Kelly*, 3 Barb. 419 (N.Y. Sup. Ct. 1848) .................................................................................... 12

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) .......................................................... 7

*Lorenzo v. Dee Mark, Inc.*, No. 23-cv-48,
    2026 U.S. Dist. LEXIS 36315 (S.D.N.Y. Feb. 23, 2026) .......................................................... 9

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58 (2d Cir. 2021) .......................................... 11

*Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024) ............................................. 5, 8

*Martineko v. 212 Steakhouse, Inc.*, No. 22-cv-518,
    2024 U.S. Dist. LEXIS 144128 (S.D.N.Y. Aug. 13, 2024),
    adopted by 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024) .............................. 5, 6, 8

*Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127 A.D.3d 1452
    (N.Y. App. Div. 3d Dep't 2015) ................................................................................................ 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................................ 4, 5

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299,
2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014) ........................................................ 10

*Packer v. Raging Cap. Mgmt., LLC*, 105 F.4th 46 (2d Cir. 2024)........................................... 12

*Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266,
2013 U.S. Dist. LEXIS 107561 (S.D.N.Y. July 31, 2013) .................................................... 10

*R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984)...................................... 5

*Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
88 F.4th 103 (2d Cir. 2023) ................................................................................................. 13

*Salazar v. NBA*, 118 F.4th 533 (2d Cir. 2024) .................................................................. 12, 13

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015)...................................... 7

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017) .................... 7, 15

*Sanchez v. Clipper Realty, Inc.*, No. 21 Civ. 8502,
2026 U.S. Dist. LEXIS 36716 (S.D.N.Y. Feb. 23, 2026)..................................... 5, 6, 14, 15, 16

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011)...................... 5, 9

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ...................................................................... n.5

*Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58 (2d Cir. 2018)........................................... 17, 18, 21

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022)........................................................ 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................... 11, 12

*Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012) .................................... 14

*Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085,
2024 U.S. Dist. LEXIS 183551 (E.D.N.Y. Oct. 7, 2024)...................................................... 11

*Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219 (S.D.N.Y. 2020)............... 7, 9, 15

*Williams v. Harry's Nurses Registry, Inc.*, No. 24-34-CV,
2025 U.S. App. LEXIS 6251 (2d Cir. Mar. 18, 2025)........................................................... 12

*Youngblood v. Fam. Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389,
2011 WL 4555555 (S.D.N.Y. Oct. 4, 2011)........................................................................... 5

**Statutes, Rules, and Regulations**

29 U.S.C. § 203(m)(2)(B) ........................................................................................................ 9

29 U.S.C. § 216(b) ................................................................................................................. 15

29 U.S.C. § 260 ...................................................................................................................... 15

Fed. R. Civ. P. 56(a)................................................................................................................. 4

N.Y. C.P.L.R. § 5004 ................................................................................................................ 16

N.Y. Lab. Law § 190(4) ............................................................................................................. 14

N.Y. Lab. Law § 191(1)(a)(i) .................................................................................................. 1, 14

N.Y. Lab. Law § 195(3) ..................................................................................................... passim

N.Y. Lab. Law § 196-d .......................................................................................................... 9, 10

N.Y. Lab. Law § 198(1-a) ..................................................................................................... 15, 16

N.Y. Lab. Law § 652 .................................................................................................................... 6

N.Y. Lab. Law § 663(1) ......................................................................................................... 15, 16

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.2 ....................................................................... 15

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3 ................................................................... 6, 15

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2 ................................................................ 6, 7, 8

## I.  PRELIMINARY STATEMENT

Plaintiffs Rupan Chakma, Suloy Tripora, Tapan Kanti Tanchangya, Tiyanit Kaewpan, and Pramita Chakma (collectively, "Plaintiffs" or "Class Representatives") submit this memorandum in support of their motion for partial summary judgment against Defendants Sushi Katsuei, Inc. d/b/a Sushi Katsuei Park Slope ("SK-PS"), Royal Katsuei, Inc. d/b/a Sushi Katsuei West Village ("SK-WV"), Aye Aye Swe ("A. Swe"), and Aung Ko Win ("Win," and collectively with SK-PS, SK-WV and "A. Swe," "Defendants").  Plaintiffs move for judgment as to liability and damages on the NYLL claim that Class Members were illegally paid pursuant to a tip credit.[1]  Plaintiffs also seek summary judgment as to A. Swe's and Win's individual liability under the NYLL and FLSA and on Class Members' claims that Defendants (1) unlawfully paid Class Members on a biweekly basis, (2) failed to provide wage statements that complied with NYLL § 195, (3) are liable to pay liquated damages, and (4) are liable to pay prejudgment interest.  Finally, Plaintiffs move for summary judgment as to liability on their claim that Defendants misappropriated Subclass Members'[2] tips at SK-PS.[3]

The record in this case is clear and entitles the Class Members to summary judgment for liability and damages on their tip credit claims. As set forth below, there is no dispute that Defendants paid all Class Members pursuant to New York's tip credit but never provided any of the Class Members with a proper written notice prior to taking that tip credit. As such, Defendants

---

[1]  As used herein, "Class Members" refers to all tipped food-service employees other than sushi chefs who worked for Defendants at the Sushi Katsuei restaurants at any time between September 1, 2017 and February 7, 2025. *See* ECF No. 60 at 8; ECF No. 71 at 3.

[2]  As used herein, Subclass Members refers to all tipped food-service employees who worked SK-PS at any time between September 1, 2017 and February 7, 2025, and who participated in the tip-pool. ECF No. 60 at 27-28; ECF No. 71 at 3.

[3]  In support of their motion, Plaintiffs submit their Local Rule 56.1 Statement of Undisputed Material Facts ("SMF") and the June 2, 2026 Declaration of Josef Nussbaum ("Nussbaum Decl.") and exhibits annexed thereto ("Nussbaum Ex. __"). Citations to depositions are referenced by the deponent's last name (*e.g.*, "Win Dep."),

1

were not entitled to pay the Class Members pursuant to the New York tip credit and are liable for New York minimum wage violations. Furthermore, there is no dispute that Defendants required Subclass Members to share tips with a manager at SK-PS and that Defendants retained tips earned by Subclass Members.

There is also no dispute that Defendants violated N.Y. Lab. L. § 191(1)(a)(i) by paying Class Members on a biweekly basis even though Class Members were manual workers, and Defendants failed to provide them with wage statements that complied with NYLL § 195(3).

Class Members are also entitled to liquidated damages because Defendants cannot satisfy their burden to show that they took active steps to comply with the law. Lastly, it is undisputed that Defendant Win was Class Members' employer at SK-PS and Defendant Win was Class Members' employer at SK-WV, and thus they are both individually liable under the FLSA and NYLL for violations that took place at the respective locations they operated.

## II.  RELEVANT PROCEDURAL HISTORY AND STATEMENT OF FACTS

On September 1, 2023, Plaintiffs, who are former tipped food-service employees at Sushi Katsuei, commenced this class and collective action against Defendants SK-PS and SK-WV as well as against the restaurants' owners/operators, husband and wife Aung Ko Win and Aye Aye Swe. ECF. No. 1. Plaintiffs filed an amended complaint on September 30, 2024. ECF No. 58. Plaintiffs allege that Defendants violated the FLSA and/or the NYLL by (1) paying tipped employees pursuant to a tip credit without providing the requisite notices under New York law; (2) illegally requiring tipped food-service employees to share tips with a management level employee and non-service related employees, (3) until late 2022, paying tipped employees – who are manual workers – on a biweekly basis; and (4) failing to provide Class Members with the wage notices and wage statements required under New York law. *See generally* ECF. No. 58.

2

On February 7, 2025, the Court certified this case as a class action under the NYLL. *See* ECF No. 60. The class consists of all tipped food-service employees who worked at either of the Sushi Katsuei restaurants in New York City at any time between September 1, 2017 and February 7, 2025. *See id*. at 8; ECF No. 71 at 3.  The Court also certified a subclass of all tipped food-service employees who worked SK-PS at any time between September 1, 2017 and February 7, 2025, and who participated in the tip-pool. ECF No. 60 at 27-28.

Defendants paid all Class Members the New York tip credit minimum wage rather than the full minimum wage. SMF ¶ 24. Until late 2022, Defendants paid Class Members on a biweekly basis even though Class Members spent more than 50% of their work time setting tables, serving customers, clearing tables, cleaning the restaurant, and preparing food. *Id*. at ¶ 71. Although Defendants took a tip credit against Class Members' hourly wage, they did not provide any Class Member with a wage notice that satisfied all the New York State law  requirements for applying a tip credit. *Id*. at ¶¶ 28-31.  20 of 42 Class Members never received any written notifications at all, and Class Members did not always receive written notifications (albeit still deficient ones) when their hourly wage rate was changed. *Id*. at ¶¶ 29-31. None of the wage notices Defendants provided to the 22 Class Members who received a notice state that extra pay is required if tips are insufficient to satisfy the minimum wage. *Id*. at ¶ 28.

Tips at SK-PS were allocated using a tip pool system. *Id*. at ¶ 41. According to Defendants, tips left by customers at SK-PS each shift were allocated among the servers and sushi chefs who worked that shift.  *Id*. at ¶  52. In reality, as described below, one of the so-called servers in the tip pool was actually a manager, and the restaurant also retained a portion of the tips. *See generally* SMF ¶¶ 41-69.

Specifically, SK-PS employed a manager at the restaurant named Maya Swe ("M. Swe").

3

*Id*. at ¶ 42. There is no dispute that M. Swe exercised supervisory authority at SK-PS, as she had input into employees' scheduling, maintained handwritten records of the tips received from customers and how the tips were be divided, kept track of which employees came into work on time and which employees arrived late, and was responsible for communicating with employees at SK-PS on behalf of Defendants. *Id*. at ¶ 43-49. In fact, earlier in this litigation, this Court explicitly found that M. Swe is a "manager" as SK-PS and that she operates as Defendants' "agent." *See generally* Ex. 23. Dpecially, the Court found:

> "[W]hen a manager acts as an agent for a corporate employer," as here, the manager's "actions may be attributed to a corporate entity for FLSA purposes." *Keawsri* v. *Ramen-Ya Inc.*, No. 17 Civ. 2406 (VEC), 2018 WL 279756, at *4 (S.D.N.Y. Jan. 2, 2018) (collecting cases). "So long as the manager or supervisor had actual supervisory authority over the plaintiff and acted in the course of his or her employment … , the manager is an agent of the plaintiff's employer." *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2004 WL 725969, at *4 (S.D.N.Y. Apr. 2, 2004). This is at least true with respect to M. Swe [….]

*Id*. at 23.

Defendants claim to have allocated a portion of the tips left by customer at SK-PS to be paid to sushi chefs.  To be sure, Defendants maintain end of shift "tip sheet" records which document that SK-PS apportioned sums of tips to sushi chefs. SMF ¶¶ 51-59.  All tips that were actually paid to sushi chefs were included in their paychecks. *Id*. at ¶ 61. However, the amount paid to sushi chefs in their paychecks is far less than the amounts allocated to them in the tip sheets. Thus, Defendants actually retained a substantial portion of employees' tips. *Id*. at ¶¶ 62-29.

There is also no dispute that Defendants did not take any affirmative steps to ensure their compliance with wage and hour laws. SMF ¶¶ 72-73.  Finally, there is no dispute that Defendant Win operated SK-PS and Defendant A. Swe  operated SK-WV, thus making them "employers" responsible for the FLSA and NYLL violations at the location they admit having managed/operated. Specifically, both Win and A. Swe identify themselves as the "sole

4

shareholder, operator, and manager" of each respective location. *Id.* at ¶¶ 1, 12.  They both admit that they interview, hire and set employees schedules at the Sushi Katsuei location they operate. *Id.* at 4-7, 15-17, 20-22.  They both also determine how employees are paid at the location they run and they both maintain employment records. *Id.* at 8-10, 18-19.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).

To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at

586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted). *see also Anderson*, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative"). The "opposing party must set forth 'concrete particulars' showing that a trial is needed." *Cousin v. White Castle System, Inc.*, No. 06-CV-6335, 2009 U.S. Dist. LEXIS 57079, at **10-11 (E.D.N.Y. July 6, 2009) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)).

Where "class claims all derive from the same compensation policies and tipping practices," *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011), it follows that evidence of those policies and practices will apply to the whole class. *See also Youngblood v. Fam. Dollar Stores, Inc.*, No. 09-cv-3176 (RMB), 2011 U.S. Dist. LEXIS 115389, at *14 (S.D.N.Y. Oct. 4, 2011) ("[T]he crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights"); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (similar). Accordingly, courts can and do grant or deny summary judgment on a classwide basis for wage and claims such as the ones at issue here. *See, e.g., Sanchez v. Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2026 U.S. Dist. LEXIS 36716, *40 (S.D.N.Y. Feb. 23, 2026) (granting classwide summary judgment on biweekly pay claims, NYLL pay rate notice violations, and liquidated damages) (Failla J.); *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024) (granting classwide summary judgment on, among other things, tip credit claims and individual employer status); *Martineko v. 212 Steakhouse, Inc.*, 2024 U.S. Dist. LEXIS 144128 (S.D.N.Y. Aug. 13, 2024) (recommending classwide partial summary judgment in FLSA and labor law case) *adopted by* 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept.

6

24, 2024); *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207 (S.D.N.Y. 2023) (granting classwide summary judgment on NYLL wage notice and overtime claims); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) (granting summary judgment on claims for FLSA and NYLL minimum wage violations and NYLL fines and fees).

To obtain classwide summary judgment, a plaintiff must establish that there is no genuine dispute as to an unlawful labor law practice that applies classwide. *See, e.g., Martineko*, 2024 U.S. Dist. LEXIS 144128, at *49 ("Summary judgment should be granted on Plaintiffs' minimum wage claim based on Defendants' unlawful use of a tip credit because there is no genuine dispute that Defendants paid class members pursuant to a tip credit without providing the required written notice."). In so doing, a plaintiff may offer direct evidence of a classwide policy or practice that establishes classwide liability. *E.g.*, *Balderramo*, 668 F. Supp. 3d at 239 (granting summary judgment on classwide wage and hour claims).

## IV. ARGUMENT

### A. Defendants Violated New York's Minimum Wage Law by Paying Class Members Pursuant to a Tip Credit without Providing the Required Notice

Defendants violated New York's minimum wage requirements by paying Class Members pursuant to a tip credit without providing the required written notice. The NYLL sets a minimum hourly required rate of pay for all employees. *See* N.Y. Lab. Law § 652. New York permits employers to deviate from the statutory minimum wage for "tipped employees" and pay less than the minimum wage by taking a "tip credit" only if certain prerequisites are satisfied. N.Y. Comp. Codes R. & Regs ("N.Y.C.R.R."), tit. 12, § 146-1.3. Under New York law, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order (the "Hospitality Wage Order"). *Id.*

7

Section 146-2.2 of the Hospitality Industry Wage Order is titled "Written notice of pay rate, tip credit and pay day." N.Y.C.R.R., tit. 12, § 146-2.2.  It states that

> an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*Id.* § 146-2.2(a).  Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay." *Id.* § 146-2.2(a), (b). "[T]he employer bears the burden to show that it has complied with the NYLL's tip-credit notice requirements. *Chichinadze v. BG Bar, Inc.*, 517 F. Supp. 3d 240, 254 (S.D.N.Y. Feb 8, 2021) (Failla J.) (citation omitted). The law requires the employer to "obtain from the employee a signed and dated written acknowledgment… of receipt of this notice, which the employer *shall preserve and maintain for six years*." N.Y.C.R.R. tit. 12, § 146-2.2(c) (emphasis added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090, at *24 (S.D.N.Y. Feb. 25, 2022).  The tip credit notice requirements are "strictly construed." *Chang v. Loui Amsterdam, Inc.*, No 19-CV-3056 (RER), 2022 U.S. Dist. LEXIS 177606, *25 (E.D.N.Y. Sept. 29, 2022).

If an employer fails to provide written notices that include all the requirements described in § 146-2.2, it may not pay tipped employees pursuant to a tip credit. *E.g.*, *Chichinadze*, 517 F. Supp. 3d at 256 (Failla J.); *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) ("An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid.") (citations omitted); *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090, at *23-27; *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at *21-24 (S.D.N.Y. Mar. 25, 2021); *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 234-35 (S.D.N.Y. 2020); *Hernandez*

*v. JRPAC Inc.*, No. 14 Civ. 4176, 2016 U.S. Dist. LEXIS 75430, at *81 (S.D.N.Y. June 9, 2016) ("Notice of the tip credit under the NYLL . . . must be written."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice […]").

Here, Defendants paid all the Class Members pursuant to a tip credit wage but did not satisfy the notice requirement as to any of them. SMF ¶¶ 24-31. Defendants never provided 20 of the 42 Class Members with *any* written wage notices at all. *Id*. Of the 22 Class Members who did receive wage notices, none of those notices stated that Defendants would provide extra pay to Class Members if their tips were insufficient to bring the employees' hourly rate up to the basic minimum hourly rate. *Id*. at ¶ 28.

Finally, as outlined above, § 146-2.2(b) provides that notice is also required "prior to any change in the employee's hourly rates of pay." NYCRR § 146-2.2(b).  Here, Defendants did not always provide Class Members who with a wage notice reflecting the pay rate change. SMF ¶ 31.

In short, it is undisputed that Defendants' use of the tip credit was unlawful, and Defendants were required to pay the Class Members the full New York minimum wage. Defendants' undisputed failure to do so subjects them to liability under the NYLL. *See Hwangbo v. Kimganae, Inc*., No. 19-cv-6356 (DLI), 2023 U.S. Dist. LEXIS 55614, *20-21 (E.D.N.Y. March 30, 2023) (granting summary judgment to plaintiffs on a tip credit notice claim where the notices defendant provided "fail[ed] to comply with the strict notice requirements under NYLL" because the "notices fail[ed] to identify" all the information required in § 146-2.2(a) and were not provided in multiple years as required under NYCRR § 146-2.2(b)); *Chang*, 2022 U.S. Dist. LEXIS 177606, *27 (granting summary judgment to plaintiffs on a tip credit notice where, as here, the alleged notice "contain[ed] no statement explaining 'that extra pay is required if tips are insufficient to reach the

9

basic minimum hourly rate[]'"") (quoiting § 146-2.2(a)); *Mangahas*, 754 F. Supp. 3d 468, 495-98 (granting summary judgment to a class of restaurant employees who were paid pursuant to a tip credit but did not receive the requisite written notice); *Martineko*, 2024 U.S. Dist. LEXIS 144128, at *49-53 (same).

## B. Defendants Misappropriated Subclass Members' Tips At SK-PS

N.Y. Lab. L. § 196-d provides, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." Defendants violated N.Y. Lab. L. § 196-d by (1) including a tip-ineligible manager in SK-PS's tip pool; and (2) retaining a portion of tips at SK-PS. *Shahriar v. Smith & Wolensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011) ("New York law [] prohibits employers from requiring tipped employees to share tips with non-service employees or managers."); *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013); *cf. Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (under FLSA, "the practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping").

Tips at SK-PS were allocated using a tip pool system. SMF ¶ 41. According to Defendants, the SK-PS tips for each shift were allocated among the servers and sushi chefs who worked that shift. (SMF ¶ 52; Win Dep. 56:17-23.) In reality, as described below, one of the so-called servers in the tip pool was actually a manager, and the restaurant retained a portion of the tips.

### i. Defendants illegally distributed SK-PS tips to a manager

The New York Court of Appeals has set the following standard for determining whether supervisory employees are ineligible to receive tips:

> We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation … *Meaningful authority, not final authority, should be the standard.*

> In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.

*Barenboim*, 21 N.Y.3d at 473 (emphasis added).  If an individual has meaningful authority over employees, she may not receive tips even if she provides direct service to customers.  *See Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910, at *23 (S.D.N.Y. Jan. 10, 2014) ("Defendants' argument that [individuals with meaningful authority] were permitted to share tips for shifts in which they provided customer service is contrary to case law establishing that, under NYLL, the 'practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.'") (quoting *Chung*, 246 F. Supp. 2d at 229); *see also Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266, 2013 U.S. Dist. LEXIS 107561, at *9-10 (S.D.N.Y. July 31, 2013).

Here, there is no dispute that M. Swe supervised employees at SK-PS.  She instructed new employees at the restaurant about what their job duties were and the work they were expected to perform. SMF ¶ 44. She had input into employees' scheduling at SK-PS and was responsible to keep track of which employees at SK-PS came into work on time and which employees arrived late. *Id*. at ¶¶ 45-47.  M. Swe was also involved in employees' pay at SK-PS and maintained

11

Subclass Members' employment records. For example, she was charged with maintaining handwritten records of the tips received from customers at SK-PS and how the tips were be divided between the food-service employees. *Id*. at ¶ 48. Finally, M. Swe was responsible for communicating with employees at SK-PS on behalf of Defendants. *Id*. at ¶ 49. In fact, this Court has already found that M. Swe is a "manager" as SK-PS and that she operates as Defendants' "agent." *See supra* pg 4.

These facts are more than sufficient to make M. Swe ineligible to participate in the restaurant's tip pool. *See*, *e.g.*, *Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (PAC), at 9:8-10:1 (S.D.N.Y. Nov. 16, 2014) (submitted as Ex. 47) (finding after bench trial that that person who, among other things, interviewed and disciplined employees, and created an initial schedule – but did not have ultimate authority over any of these matters – was ineligible to receive tips under § 196-d); *Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127 A.D.3d 1452, 1454-55 (N.Y. App. Div. 3d Dep't 2015) (finding that individual who participated in hiring process and had input into schedules was ineligible to participate in tip pool); *Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085(EK), 2024 U.S. Dist. LEXIS 183551, *33-34 (E.D.N.Y. Oct 7, 2024) (finding individual "exercised meaningful managerial authority" under *Barenboim* where, among other things, the employee instructed other employees "when to show up for work" and "logged [employees'] hours for payroll.").

### ii. Defendants illegally retained a portion of tips at SK-PS

The FLSA and the NYLL both explicitly prohibit employers from retaining any portion of the tips left by customers. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips . . . ."); N.Y. Lab. Law § 196-d ("No employer or his agent . . . shall demand or

accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or any charge purported to be a gratuity."); *see also Lorenzo v. Dee Mark, Inc.*, No. 23-cv-48 (MKV), 2026 U.S. Dist. LEXIS 36315, at \*22 (S.D.N.Y. Feb. 23, 2026) ("Both the FLSA and NYLL contain provisions barring employers from withholding from employees' tips that they earn.").

Courts have granted plaintiff's summary judgment on tip retention claims under both the NYLL and FLSA where the employer's records demonstrate that it did not distribute to employees all of the tips that were earned. In *Lorenzo*, for example, the court granted summary judgment to Plaintiffs where the employer's records showed that the employer "fail[ed] to remit all gratuities" to a service employee, as demonstrated by discrepances between the amount of tips that an employee earned and the amount actually paid to the employee. *See Lorenzo*, 2026 U.S. Dist. LEXIS 36315, at \*28-30 (granting summary judgment to plaintiff where employer's records showed that more tips were collected than paid to the employee).

A comparison of SK-PS's tip sheets to sushi chefs' pay records shows that the restaurant did not actually distribute the entirety of the tip pool to employees. In other words, the restaurant retained a portion of Class Members' tips. SK-PS's tip sheets show, *inter alia*, the total credit card tips left by customers and the total credit card tips remaining after deducting a credit card processing fee. (Nussbaum Decl. ¶¶ 35-43; Exs. 25-38; Win Dep. 89:5-90:5, 91:19-24, 93:13-94:13, 96:14-17, 106:6-17.) From the credit card tips remaining after deducting the processing fee, the tip sheets list a number that supposedly represents the amount of tips paid to Sushi Chefs. (Nussbaum Decl. ¶¶ 35-43; Exs. 25-38; Win Dep. 96:18-20, 106:6-17.) In reality, Defendants actually distributed less than that amount to sushi chefs as tips. To be sure, Defendants' testified that SK-PS distributed credit card tips to Sushi Chefs entirely through their

13

paychecks.  (SMF ¶ 61.)  However, as shown in chart below, the amount of tips distributed in SK-PS's sushi chefs' paychecks was routinely less than the tip amount listed on the restaurant's tip sheets as allegedly being allocated to sushi chefs:

| Pay period | Amount on tip sheets allegedly allocated for sushi chefs | Tips actually distributed in sushi chefs' paychecks | Undistributed tips |
|---|---|---|---|
| 2017 (from September 1) | $23,438.85 | $2,995.00 | $20,443.85 |
| 2018 | $76,264.31 | $9,775.00 | $66,489.31 |
| 2019 | $71,386.48 | $12,096 | $59,290.48 |
| 2020 | $54,173.40 | $7860 | $46,313.40 |
| 2021 | $137,623.90 | 78,671 | $58,952.90 |
| 2022 | $135,567.93 | $10,0954 | $34,613.93 |
| 2023 (until September) | $75,808.20 | $6,1643 | $14,165.20 |
| **TOTALS** | **$574,263.07** | **$273,994** | **$279,825.22** |

(Exs. 25-38.)  As Defendants have no explanation of what happened to the balance of the supposed sushi chef tip amount reflected in the tip sheets  (Win Dep. 175:19-178:25),  it is undisputed that Defendants in fact retained a portion of those tips, in violation of NYLL § 196-d § 203]. *E.g., Lorenzo*, 2026 U.S. Dist. LEXIS 36315, at *28-30.

### C.  Defendants Unlawfully Paid Class Members on a Biweekly Basis Until the End of 2022

NYLL Section 191, which is part of Article 6 of the NYLL, provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i). The statute defines the term "manual worker" as "a mechanic, workingman[,] or laborer." *Id.* § 190(4). The New York State Department of Labor (the "NYSDOL"), whose interpretation is given judicial deference in New York state courts, has "interpreted the term to include employees who spend more than 25 percent of their

14

working time performing physical labor, with physical labor broadly includ[ing] a wide range of physical activities undertaken by employees." *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 225 & n.10 (S.D.N.Y. 2023) (internal quotation marks omitted) (quoting N.Y. Dep't of Lab. Op. Letter, No. RO-09-0066 (May 21, 2009)). Typically, the NYSDOL "looks at the duties performed by an employee in order to determine whether he or she is a manual worker and makes a case-by-case determination." *Id.* at 225-26. *See also, e.g., Sanchez*, 2026 U.S. Dist. LEXIS 36716, *56 ("the Court finds that employees who spend more than 25 percent of their working time moving and organizing packages qualify as manual workers under the NYLL […]")(Failla J.).

Here, there is no dispute that until the end of 2022, Defendants paid Class Members on a biweekly basis. SMF ¶ 71. It is also undisputed that Class Members spent the majority of their work time performing physical tasks such as setting tables, serving customers, clearing tables, cleaning, and preparing food. *Id.* at ¶ 70. Accordingly, under well settled law that restaurant waitstaff are "manual workers" under the NYLL, Defendants violated the NYLL by paying Class Members on a biweekly basis. *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (waitstaff are manual workers under NYLL); *Beh v. Community Care Companions*, No. 19-cv-1417, 2021 U.S. Dist. LEXIS 197316, at *7 (W.D.N.Y. Feb. 1, 2021) (noting that "cooks, wait staff, . . . and pizzeria workers have been found to be 'manual workers'" under the NYLL).

### D. Defendants Are Liable for Liquidated Damages Under the NYLL

Plaintiffs and Class Members are entitled to summary judgment on their claims for liquidated damages on their minimum wage (tip credit) claims. Under the FLSA and NYLL, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless it had a good faith belief that it was complying with the law. 29 U.S.C. §§ 216(b), 260; N.Y. Lab. L.

15

§§ 198(1-a), 663(a); *Villanueva*, 500 F. Supp. 3d at 235 ("Both the FLSA and the NYLL provide for liquidated damages."). Under the FLSA, "[l]iquidated damages are mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary." *Id.* at 239 (citing 29 U.S.C. § 260). The standard for liquidated damages under the NYLL is similar. *Id.* "The employer bears the burden of proving good faith and reasonableness, [and] the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999). To avoid mandatory liquidated damages under the FLSA and NYLL an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze*, 517 F. Supp. 3d at 258 (Failla J.) (internal citations omitted).

Here, Defendants cannot satisfy their burden to produce evidence sufficient to create a dispute of fact as to whether they attempted to comply with the wage and hour laws in good faith. Both Defendants A. Swe and Win admitted that they never consulted with an attorney or sought legal advice as to whether the restaurant's pay practices complied with the law. SMF ¶¶ 72-73. While A. Swe contends that her accountant was responsible for ensuring that Class Members were properly paid, she has no evidence that she actually consulted with him about payroll practices. *Id*. at ¶ 73. Since it is Defendants' burden to establish that they took "active steps to ascertain the dictates of the FLSA and then act to comply with them" *Herman*, 172 F.3d at 142, these bald unsupported assertions do not allow Defendants to escape liability for liquidated damages. *E.g., Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 U.S. Dist. LEXIS 163259, *35 (S.D.N.Y. Sept. 24, 2019) ("even if defendants' evidence could show subjective good faith reliance on the company they retained to process their payroll, their evidence fails to show objectively

16

reasonable grounds for their belief that their practices comported with the FLSA's and the NYLL's requirements.") (cleaned up); *Salustio*, 264 F. Supp. 3d at 557 (finding that the defendant, who testified that he had relied on advice from his accountant, failed to meet his burden of demonstrating good faith in part because the defendant's "explanation of his conversation with his accountant was sparse and lacking in detail").

Moreover, given that Defendants blatantly misappropriated Class Members' tips, it will be impossible for them to show "objectively reasonable grounds" for their belief that their payroll practices comported with the law. Accordingly, Class Members are entitled to liquidated damages in an amount equal to the compensatory damages awarded via this motion and at trial. *See Chichinadze*, 517 F. Supp. 3d at 258 (granting summary judgment on liquidated damages when employer testified that he "had not consulted with a lawyer or any other professional before deciding on [a restaurant's] payroll practices") (Failla J.); *Sanchez*, 2026 U.S. Dist. LEXIS 36716, *63 (noting the "common practice in wage and hour cases" is to award liquidated damages) (Failla J.).

### E. Defendants Violated N.Y. Lab. Law § 195(3) by Failing to Provide Class Members with Compliant Wage Statements

Under N.Y. Lab. Law § 195(3), employers are required to furnish their employees with wage statements "with every payment of wages" listing:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage […]

N.Y. Lab. L. § 195(3).

17

Here, it is undisputed that Defendants violated N.Y. Lab. L. § 195(3) because, *inter alia*, the wage statements Defendants provided to Class Members failed to list the tip credit allowance that Defendants applied to Class Members' wages. Exs. 11-19.

Class Members have Article III standing for the N.Y. Lab. L. § 195(3) claim because there is a common law analogue to the intangible harm they suffered from the N.Y. Lab. L. § 195(3) violation. The elements of Article III standing are "(1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision." *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (internal quotation marks omitted).

An injury in fact exists where there is "the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." *Id*. at 62 (insertion in original; internal quotation marks omitted). "[T]raditional tangible harms, such as physical harms and monetary harms[,]" are "concrete injur[ies] in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). "Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. (internal citation omitted). That is, an intangible injury will be a concrete harm where there is a "close historical or common-law analogue for the asserted injury." *Packer v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 50 (2d Cir. 2024) (cleaned up); *see also*, *e.g.*, *Salazar v. NBA*, 118 F.4th 533, 541 (2d Cir. 2024) ("To allege a concrete harm, a plaintiff must point to a close historical or common-law analogue for their asserted injury.") (cleaned up); *see also Williams v. Harry's Nurses Registry, Inc.*, No.

18

24-34-CV, 2025 U.S. App. LEXIS 6251 (2d Cir. Mar. 18, 2025).  "[T]he analogue need not be an exact duplicate in American history and tradition."  *Id*. at 52 (cleaned up).

The Second Circuit has never considered whether there is a common law analogue to the harm caused by N.Y. Lab. L. § 195 violations.  *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2024) (applying *TransUnion*'s holding that informational injuries without a common law analogue must have downstream consequences to establish a concrete injury).  Thus, the Second Circuit has "left open the door to argue that a contested statutory violation is a 'close historical or common law analog.'"  *Charles v. Pinnacle Too, LLC*, No. 22 CV 4232, 2024 U.S. Dist. LEXIS 188084, at *36 (S.D.N.Y. Oct. 15, 2024).   In fact, there is such an analog for this intangible injury – the injury addressed by the common law action of accompt or account.  *See id*. at *35-39.  Under *TransUnion* and Second Circuit precedent, therefore, Class Members' intangible harm satisfies Article III's injury in fact requirement.

The action of account "arose from the feudal relation of lord and bailiff, and was the proper and peculiar remedy of the feudal lord for enforcing that accounting which it was the duty of his bailiff or steward to render."[4]  *Adams's Case*, 3 Ct. Cl. 312, 335 (Ct. Cl. 1867).  The purpose of the action of account "was to bring the defendant to account before the court, and thereby to ascertain and declare judicially the balance of account between [the plaintiff and defendant], its amount, and from which of them it was due."  *Id*. at 334.  A pleading for an account claim "alleged [the defendant's] liability to account, and the default charged was a default in not accounting" rather than any debt owed.  *Id*. at 335; *see also Kelly v. Kelly*, 3 Barb. 419 (N.Y. Sup. Ct. 1848) (discussing 1788 statute creating a cause of action "'when any person is or shall be bound or liable

---

[4]  According to scholars, the action of account dates back to at least the Twelfth or Thirteenth Centuries.  J A Watson, *The Duty to Account: Development and Principles* 26 (The Federation Press 2016).

to account, as guardian, bailiff, receiver, or *otherwise*, to any other, and will not give an account willingly[.]'") (emphasis in original) (quoting 1 R.L. of 1813, p.90).  In other words, the harm that the action of account remedied was the violation of the plaintiff's right to receive an accounting from a party with a legal obligation to account to do so.[5]

N.Y. Lab. L. § 195(3) creates a legal duty on the part of employers to provide what is essentially an accounting upon payment of what is due to employees.  *See Imbarrato v. Banta Mgmt. Servs.*, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, at *22-23 (S.D.N.Y. Mar. 20, 2020).  The itemization of the tip credit that Defendants failed to include on Class Members' wage statements is directly relevant to calculating the wages Defendants owed Class Members, much like a common law accounting sets forth various debits and credits to determine the balance between two parties.  *Cf. Barney v. Saunders*, 57 U.S. 535 (1854) (appeal of accounting of an estate).  It is immaterial for the standing analysis whether employers were required to account to employees at common law.  This Court has rejected that notion that "a plaintiff adequately plead *every* element of a common-law analog to satisfy the concreteness requirement."  *Salazar*, 118 F.4th at 542 n.6.  "[W]hat matters is that the intangible harm arising from [a statutory claim] bears a relationship to an injury with a close historical or common-law analogue.  And that analog need

---

[5] Other common law claims can similarly arise based on the violation of a right without any additional harm.  *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 345 (2016) (Thomas, J., concurring) ("Many traditional remedies for private-rights causes of action – such as for trespass, infringement of intellectual property, and unjust enrichment – are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right.").  When dealing with information-based harms with common law analogues of defamation and public disclosure of private information, the violation of the right against disclosure of information is the harm that supports standing, as no showing of how the information was used is necessary to establish standing.  *See Bohnak v. Marsh & McLennan Cos.*, 79 4th 276, 284-85 (2d Cir. 2023) (noting that in *TransUnion* "the Court concluded that the publication of false information about these class members to third parties was itself enough to establish a concrete injury; it did not take further steps to evaluate whether those third parties *used* the information in ways that harmed the class members."); *see also id*. at 286 ("The core of the injury Bohnak alleges here is that she has been harmed by the exposure of her private information—including her SSN and other PII—to an unauthorized malevolent actor. This falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete.'").

not be an exact duplicate." *Bohnak*, 79 F.4th at 286 (cleaned up). An employer's failure to comply with the N.Y. Lab. L. § 195(3) requirements necessary to calculate an employee's wages owed by the employer is plainly analogous to a bailiff's failure to itemize the details necessary to determine the balance between a bailiff and a lord that gave rise to an action for accompt, and therefore it constitutes an injury in fact under Article III. *Cf. Salazar*, 118 F.4th at 540-42 (recognizing as injury in fact a harm with a common-law analogue); *Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 115-117 (2d Cir. 2023) (same). Accordingly, the Class Members have suffered an injury in fact and have standing for the N.Y. Lab. L. § 195(3) claims. Thus, they are entitled to summary judgment on the N.Y. Lab. L. § 195(3) claim. *E.g., Sanchez*, 2026 U.S. Dist. LEXIS 36716, *61 (granting classwide summary judgment to plaintiffs on § 195(3) claim where employers did not provide notices that complied that provision of the Labor Law) (Failla J.).

### F. The Class Members are Entitled to Summary Judgment as to Damages on Their Tip Credit Claims

In addition to liability, Plaintiffs seek summary judgment as to damages on their tip credit claims based on the payroll records produced by Defendants. It is undisputed that these records reflect the amount of time and hourly rates that Class Members were paid pursuant to a tip credit at Sushi Katsuei. Exs. 11-19.

The Class Members' compensatory and liquidated damages for their tip credit claim are set forth in the spreadsheet submitted as Exhibit 20 of the Nussbaum Declaration, which cover each year of the liability period. These damages are calculated based on the above-described payroll records produced by Defendants and submitted with this motion as Exhibits 11-19 of the Nussbaum Declaration. *See generally* SMF ¶¶ 34-40; Nussbaum Decl. ¶ 21 (describing Plaintiffs' calculation methodologies). The following wage rates were used in the damage calculation:

21

| Year | NY minimum wage | Hourly tip credit taken |
|------|-----------------|-------------------------|
| 2017 | $11 | $3.50 |
| 2018 | $13 | $4.35 |
| 2019 | $15 | $5 |
| 2020 | $15 | $5 |
| 2021 | $15 | $5 |
| 2022 | $15 | $5 |
| 2023 | $15 | $5 |
| 2024 | $16 | $5.35 |
| 2025 | $16.50 | $5.50 |

*See* N.Y.C.R.R., tit. 12, §§ 146-1.2, 146-1.3.

Unpaid tip credit/minimum wages were calculated by multiplying the total number of hours each Class Members worked at the tip credit rate (as provided in Defendants' payroll records) by the tip credit rate that Defendants applied during the relevant time period. In sum, the Class Members' unpaid tip credit/minimum wage damages total $273,147.50. *See* SMF ¶ 34; Nussbaum Decl. ¶¶ 21-22 & Exs. 11-20. As discussed above, Class Members are also entitled to an equal amount as liquidated damages under the NYLL.

In summary, the Class Members' total undisputed damages for the tip credit violations are:

- Compensatory Damages: $273,147.50;

- Liquidated Damages: $273,147.50;

- Total Damages: $546,295.00.

Because these damages are based solely on Defendants' own payroll records, the Class Members are entitled to summary judgment for damages in the amounts detailed above.

**G. Defendants are Liable for Prejudgment Interest Under the NYLL**

The NYLL provides for prejudgment interest on a plaintiff's compensatory damages. *See* N.Y. Lab. L. §§ 198(1-a), 663(1); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017) (Failla J.). The prejudgment interest rate is nine percent, and the date at which

22

interest starts to accrue is "the earliest ascertainable date the cause of action existed." *Conway v. Ichan & Co.*, 16 F.2d 504, 512 (2d Cir. 1994); N.Y. C.P.L.R. § 5004. When a plaintiff suffered damages at various times, courts "often choose the midpoint of the plaintiff's employment within the limitations period" for the date that interest starts to accrue. *Gamero*, 272 F. Supp. 3d at 515.

### H. Defendants Win and A. Swe Are Individually Liable as Employers for FLSA And NYLL Claims

Finally, Defendant Win is individually liable for the wage violations covered by this case at SK-PS and Defendant Win is individually liable for similar violations at SK-WV.[6]

Individual defendants are liable for FLSA and NYLL wage violations if they are "employers" within the meaning of those statutes. *See Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) (FLSA); *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013) (NYLL). "Employment" under the FLSA is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irrizarry*, 72 F.3d at 104. The ultimate question is whether "the individual possessed operational control over employees: control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (additional quotation marks omitted); *see also Herman v. RSR Sec. Servs. Ltd.* ("*RSR*"), 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case."). "'A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.'" *Tapia*, 906 F.3d

---

[6] Plaintiffs also contend that the Sushi Katsuei restaurants form a single, integrated enterprise and that Defendants Win and Swe were joint employers of Class Members at *both* SK-PS and SK-WV. Nevertheless, given that material factual disputes exist about those issues, Plaintiffs have not moved on them at this stage but intend to pursue those claims at trial.

23

at 61. (quoting *Irizarry*, 722 F.3d at 110). Notably, an individual's operational control "need not be exercised constantly for [that] individual to be liable under the FLSA" because employer "status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Irrizarry*, 722 F.3d at 110 (quotation marks omitted); *see also id.* ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." (quotation marks omitted).

In addition to an individual's overall operational control, courts consider several non-exclusive factors (the "*Carter* factors") when determining an individual's employer status under the FLSA. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (internal quotation marks omitted). "No one of the four factors standing alone is dispositive," *Tapia*, 906 F.3d at 61, and "satisfying all of these factors is not necessary to establish employer status." *Argudo v. Parea Grp. LLC*, No. 18-CV-0678, 2019 U.S. Dist. LEXIS 163249, *6 (S.D.N.Y. Sept. 24, 2019) (quoting *Grenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016)).

The NYLL has a similar standard for determining whether an individual is an employer. "Whether an individual qualifies as an employer [under the NYLL] depends on whether the particular defendant had the power to hire and fire employees, whether he supervised and controlled the conditions of employment, and whether he determined rates and methods of payment, and the like." *Flanigan v. Vulcan Power Group, LLC*, 642 Fed. App'x 46, 51 (2d Cir. 2016). District Courts in this Circuit have interpreted the definition of employer under the NYLL

24

coextensively with the definition used in the FLSA. *See, e.g.*, *Cortez v. Brand Name 99 Cents &*

*Up Corp.*, No. 24-cv-5262, 2025 U.S. Dist. LEXIS 82056, at *8 (S.D.N.Y. Apr. 30, 2025) (citing

cases).

Here, there is no dispute that Defendant Win was an employer at SK-PS and Defendant A.

Swe was an employer at SK-WV, as Defendants have admitted to all of the *Carter* factors.  In

sworn affidavits, both Defendants openly identify themselves as the "sole shareholder, operator,

and manager" of each respective location they worked at. SMF ¶¶ 1, 12. They both admit in

interrogatory responses that Defendant Win interviewed, hired and set employees schedules at SK-

PS and Defendant A. Swe did the same at SK-WV.  *Id*. at ¶¶ 4-7, 15-17.  *See Herman*, 172 F.3d at

140 ("fact that [defendant] hired individuals […] is a strong indication of control") (evidence that

defendant "on occasion, supervised and controlled employee work schedules" satisfies scheduling

factor). They also both determined how employees are paid at the location they run. SMF ¶¶ 8, 18.

*Irizarry*, 722 F.3d at 117 (an individual's "ultimate responsibility for the plaintiff's wages," is a

strong *indicia* of control and particularly indicative of employer status). For example, Defendant

Win testified that he decides how the daily tips are apportioned among employees at SK-PS. Win

Dep. 60:-61:7, 100:15-101:25. Finally, both Defendants Win and Swe also admit that they

maintain employee records at the restaurants. SMF ¶¶ 10, 19. *E.g., Grande v. 48 Rockefeller Corp.*,

No. 21-cv-1593, 2023 U.S. Dist. LEXIS 140490, at *39 (S.D.N.Y. Aug. 11, 2023) (fourth *Carter*

factor satisfied and employer status found where individual had "access to the employee records").

Moreover, there is no question that they both exercised operational control over their respective

locations as they both testified that that they were the "managers" and sole operators at the

restaurants they ran. (SMF ¶¶ 1, 11, 12, 23.)[7] *E.g.*, *Inclan*, 95 F. Supp. 3d at 509 (operational

---

[7]  As detailed above, SK-PS did in fact employ a manager to assist with supervising with its operations. But this does
not diminish Defendant Win's operational control over the restaurant. For example, M. Swe testified that she was

control established where individual was, among other factors, the "sole owner," hired employees at the restaurant, and was regularly present in the restaurant).

In short, it is undisputed that Defendant Win was an employer at SK-PS and Defendant A. Swe was an employer at SK-WV. *E.g.*, *Chang*, 2022 U.S. Dist. LEXIS 177606, *18-19 (finding defendants to be employers under the economic reality test the where "the parties agree that [defendants] all have authority to hire and fire employees, have input over hiring, set pay rates for employees, and created work schedules.); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) (granting summary judgment on an individual being an employer under the FLSA when he had the power to hire and fire employees and set employee compensation and schedules, and the record was neutral as to whether he maintained records).

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs are entitled to partial summary judgment.

Dated: June 2, 2026

**JOSEPH & KIRSCHENBAUM LLP**

    s/ *Josef Nussbaum*
Maimon Kirschenbaum
Josef Nussbaum
Denise A. Schulman
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and the Class*

---

hired by Defendant Win (SMF ¶ 6) and the Second Circuit has emphasized that "the fact that [an individual defendant] hired individuals who were in charge of the [employees] is a strong indication of control." *Herman,* 172 F.3d at 140.

26

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing opposition complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 8,731 words. I make this certification using the word count feature of Microsoft Word.

_/s/Josef Nussbaum_____